637 So.2d 782 (1994)
MCS-1 LIMITED PARTNERSHIP
v.
PROGRESSIVE BANK & TRUST COMPANY.
No. 93 CA 1404.
Court of Appeal of Louisiana, First Circuit.
May 20, 1994.
*783 David E. Stanley, Baton Rouge, for plaintiff-appellant, MCS-1 Limited Partnership, and intervenor/appellant, Dr. Robert M. Whitrock.
Philip J. McMahon, Houma, for defendant-appellee.
David W. Arceneaux, Houma, for intervenors-appellees, Houma Heart Clinic and Dr. Craig M. Walker.
Before WATKINS, SHORTESS and FOGG, JJ.
SHORTESS, Judge.
MCS-1 Limited Partnership (MCS) was a Louisiana partnership in commendam. Its general partner was Medical Care Systems, Inc. (Medical). Medical's president was Robert M. Whitrock. MCS sued Progressive Bank & Trust Company (defendant) seeking lost profits and loss of business reputation and goodwill allegedly caused by defendant's breach of an oral contract between defendant, MCS, and Whitrock. Whitrock intervened in the suit, seeking lost profits and compensation for damage to his reputation and credit rating. His claims were aligned with those of MCS. As an alternative to the breach of contract theory, MCS and Whitrock (collectively, plaintiffs) alleged their losses were caused by defendant's intentional (fraudulent) and negligent misrepresentations to plaintiffs, and by plaintiffs' detrimental reliance on defendant's misrepresentations.[1]
The case was submitted to a jury on special interrogatories. The first interrogatory asked: "Did Progressive Bank & Trust Company enter into a valid oral contract with MCS-1 and Dr. Whitrock?" The jury answered this question, "No." The verdict form then directed the jury: "If your answer to Question No. 1 is `NO', your deliberations are complete." Because of this instruction, the jury did not consider plaintiffs' fraud, negligent misrepresentation, or detrimental reliance claims. The trial court then entered a judgment dismissing all of plaintiffs' claims.
Plaintiffs appeal, contending the jury verdict form was legally incorrect to the extent that it interdicted the jury's findings. Plaintiffs request that we independently review the record and determine whether they have proved their claims for fraud, negligent misrepresentation, and detrimental reliance by a preponderance of the evidence. Defendant responds that in this particular case, all of plaintiffs' claims hinge on the existence of a valid oral contract.
We disagree with defendant's contention. Negligent misrepresentation and fraudulent misrepresentation are torts. Barrie v. V.P. Exterminators, 625 So.2d 1007, 1011 (La.1993). Detrimental reliance is not based on an intent to be bound and does not require the existence of a valid contract. Morris v. People's Bank & Trust Co., 580 So.2d 1029, 1036 (La.App. 3d Cir.), writs denied, 588 So.2d 101, 102 (La.1991). Since none of these causes of action rely on a contract for existence, the trial court committed legal error in ending the jury's deliberations after it found in defendant's favor on the contract issue. We thus must conduct a de novo review of the record on the issues the jury did not consider.
The following facts are pertinent to this appeal. In 1984, Whitrock, a general surgeon, decided to open a medical clinic in Amelia, a small town in south Louisiana which was thriving due to the oil boom. Whitrock intended to hire a resident from Tulane University Medical School to work at the clinic. He expected the practice to be primarily industrial medicine, with some general family practice.
The clinic opened on April 1, 1985. Hugh Long, who testified as plaintiffs' expert in economics and health care management, stated that "the timing couldn't have been worse... from an economic [perspective] to be opening up and starting a brand new business." In July 1985, oil prices dropped from $28.00 per barrel to $12.00 per barrel, the oil rig count dropped, and south Louisiana entered a recession. During this period, defendant *784 lent MCS additional money to buy equipment. The original building loan and the equipment loans were renewed and consolidated in July 1986, and MCS made one payment on the consolidation loan. When MCS was no longer able to pay its Tulane resident physician, he departed, and Whitrock began performing medical services at the clinic himself without drawing any compensation. By the end of September 1986, Whitrock realized MCS could not pay the bank note due that month.
Whitrock testified he "really didn't know what to do" at that point. He contends that he met with John H. Laing, whom he believed to be defendant's president, in late September or early October 1986; that he told Laing he could not make the payments on the note and did not know whether he should shut the clinic down and sell the assets; and that he and Laing reached an agreement that as long as Whitrock worked without compensation, defendant would not close the clinic or pursue Whitrock personally on the debt. Whitrock stated Laing felt this option was better because "[r]eal estate was not very valuable, was not as valuable as an ongoing clinic...."
Laing flatly denied this meeting ever took place. He testified that he was defendant's chairman of the board, not its president, in September and October 1986; that his appointment book showed no meeting with Whitrock; that he never made such an agreement; and that he did not meet with Whitrock until July 1988. The jury obviously believed that no contract was reached between them, and plaintiffs have not appealed that finding.
Whitrock struggled to keep the clinic open for three years. His salary accrued on the books of MCS, but there was never enough money to pay him or defendant. The clinic finally closed on October 6, 1989, after MCS and Whitrock had both taken bankruptcy.
Plaintiffs contend that even if there was no contract between defendant and plaintiffs, Laing made representations or promises to Whitrock which influenced his decision to keep the clinic open rather than close it in October 1986 and sell the assets. However, even if we credit all of Whitrock's testimony, there is insufficient evidence in the record to prove by a preponderance of the evidence that any representations by Laing or any other representative of defendant caused plaintiffs' financial losses.
Defendant did not force plaintiffs to keep the clinic open. Whitrock made a business decision to do so. He was optimistic that the recession would soon end and that the clinic would become profitable. With the benefit of 20/20 hindsight we know his decision was a bad one. The clinic never made a profit in over four years of operation. Plaintiffs' losses were caused by the economic downturn in the oil industry, not by defendant.
Furthermore, plaintiffs have failed to show by a preponderance of the evidence that they could have made a profit if they had closed the clinic in October 1986. Plaintiffs base their lost profit claims on the testimony of their accountant, Timothy Matte, who stated that if the clinic had been liquidated at that point, $135,000.00 in profit would have been available for distribution to Whitrock and the limited partners, assuming the assets were worth what they were listed on the books. However, Matte admitted that the values of those assets (the building, furniture, and equipment) were calculated by using their original cost, less depreciation. Matte's figures did not reflect the change in the economic conditions in the Amelia area. Plaintiffs offered no evidence that the assets could have been sold for book value. Plaintiffs thus failed to prove that a profit could have been made if Whitrock had made the better business decision (to liquidate in October 1986). The most plaintiffs have proven by Matte's figures is that their loss might have been less had the business been liquidated at that point.
In conclusion, after conducting a de novo review of the record on the issues of detrimental reliance, fraud, and negligent misrepresentation, we find plaintiffs have failed to prove that any representations or promises made by defendant's representatives caused their medical clinic to fail or caused them to lose profits. For these reasons, we affirm the judgment of the trial court dismissing the demands of plaintiff, MCS-1 Limited Partnership, *785 and intervenor, Robert M. Whitrock, at their cost.
AFFIRMED.
NOTES
[1] Houma Heart Clinic and Dr. Craig M. Walker intervened seeking a protective order preventing defendant from producing certain documents to plaintiff, but they had no further participation in this lawsuit.