786 So.2d 749 (2001)
Wayne Charles COATES, Sr. and Mary Naoma Benoit Coates
v.
ANCO INSULATIONS, INC., Armstrong World Industries, Inc. (formerly Armstrong Cork Company); Asbestos Claims Management Corporation (formerly National Gypsum Company); the Babcock & Wilcox Company; Branton Insulations, Inc.; et al.
No. 2000-CA-1331.
Court of Appeal of Louisiana, Fourth Circuit.
March 21, 2001.
*750 Gerolyn P. Roussel, Perry J. Roussel, Jr., Jules K. Boudreaux, Roussel & Roussel, LaPlace, Counsel for Wayne Charles Coates, Sr. and Mary Naoma Benoit Coates.
A. Wendel Stout, Janet L. MacDonell, Williams C. Harrison, Janice M. Culotta, Janis W. Lemle, Deutsch, Kerrigan & Stiles, New Orleans, Counsel for T & N, PLC, Rhone-Poulenc A.G. Company (formerly Known as Benjamin Foster Division *751 of Amchem Products) and Armstrong World Industries, Inc.
David P. Salley, Glen E. Mercer, Sessions & Fishman, L.L.P., New Orleans, Counsel for Maryland Casualty Company.
Thomas H. Huval, Stephen C. Aertker, Jr., Danny N. Bowz, Robert P. Harper, Spiro G. Latsis, Jeansonne & Remondet, New Orleans, Counsel for GAF Corporation.
Samuel M. Rosamond, III, Fleming & Rosamond, L.L.P., Metairie, Counsel for Commercial Union Insurance Company.
Court composed of Chief Judge WILLIAM H. BYRNES III, Judge MIRIAM G. WALTZER and Judge MICHAEL E. KIRBY.
WALTZER, Judge.

STATEMENT OF THE CASE
Wayne Coates and his wife, Mary Benoit Coates, sued various manufacturers and distributors of asbestos products for damages allegedly suffered during Mr. Coates' employment as an insulator working through Asbestos Workers' Union Local 53 from 1961 through 1992. Mrs. Coates claims damages for loss of consortium.
Of particular relevance to this appeal are plaintiffs' allegations that he was employed by defendant Marquette Insulations, Inc. (Marquette) at various times in "approximately 1965". The plaintiffs also allege that in addition to asbestos exposure during his employment, he was also exposed to products manufactured, distributed, and sold by companies including Marquette while at other job sites during his employment by other companies. Plaintiffs allege that Marquette and its executive officers were aware or should have been aware of the danger of asbestos exposure but fraudulently withheld this information from Mr. Coates and fraudulently misrepresented or concealed the dangerous nature of the asbestos product; that Marquette failed to provide Mr. Coates with a safe workplace and appropriate safety equipment; that Marquette negligently and/or intentionally failed to carry out those duties and failed to protect Mr. Coates from the dangers of toxic fiber and dust exposure.
Plaintiffs also allege that Marquette manufactured and distributed various asbestos-containing items such as pipe covering, blankets, special fittings, gaskets, blocks, valves, cements, mastics and jackets which it sold to companies at various times when Mr. Coates was working as an insulator, holding out the products to be its own. Marquette also is alleged to have done contracting work where Mr. Coates was working, thereby increasing his asbestos exposure.
During the pendency of this appeal, plaintiffs obtained an order from the trial court dismissing plaintiffs' petition and order for appeal as to Uniroyal, Inc.; The McCarty Corporation, its alleged executive officers, M.R. McCarty and Thomas Branton, and their alleged insurer, Commercial Union Insurance Company; Eagle, Inc., its alleged executive officers, Fred Schuber, Jr. and Fred Schuber, III and their alleged insurers, Commercial Union Insurance Company, American Employers Insurance Company and Home Insurance Company; Owens-Illinois, Inc.; and Combustion Engineering, Inc.
On 9 August 1999, Maryland Casualty Company, as the alleged insurer of Marquette, filed a motion for summary judgment seeking dismissal of plaintiffs' suit against it on the grounds that plaintiffs have developed no evidence to suggest that any asbestos exposure which may have been suffered by Mr. Coates could be attributed to Marquette, during the period of time Marquette was insured by Maryland *752 Casualty. On 5 October 1999, Maryland Casualty appeared with other defendants as co-movers for summary judgment dismissing plaintiffs' claims.
On 15 December 1999, the trial court entered judgment granting in part and denying in part the summary judgment motions. The trial court designated this judgment a final, appealable judgment.
Of relevance to this appeal, the motion for summary judgment dismissing punitive damage claims, claims for attorney's fees and claims of intentional tort against all moving defendants was granted. Plaintiffs appeal the dismissal of their claims for attorneys' fees and we affirm.
The motions for partial summary judgment by Maryland Casualty, as Marquette's alleged insurer, seeking dismissal of plaintiffs' negligence claims for lack of evidence of exposure to Marquette's products while not in Marquette's employ and of negligence during Mr. Coates' employment by Marquette, on the grounds of the exclusivity of the workers' compensation remedy were denied. Maryland Casualty appealed these portions of the trial court's judgment and we affirm.
In their "Response Brief", defendants-appellees T & N, PLC; Rhone-Poulenc A.G. Company (Formerly known as Benjamin Foster Division of Amchem Products); and Armstrong World Industries, Inc. argue that plaintiffs' claims of fraud do not fall within the scope of LSA-C.C. arts. 1953 and 2315. However, it does not appear from the record or from the computerized records of the Clerk of the Fourth Circuit Court of Appeal that these defendants appealed the trial court's judgment relating to the fraud claim. This argument, therefore, will not be considered in this appeal except insofar as it may be relevant to defendants' opposition to plaintiffs' appeal of the trial court's dismissal of plaintiffs' claim for attorneys' fees.

STATEMENT OF FACTS
Maryland Casualty made the following unverified allegation in its statement of uncontested material facts filed in the trial court record:
Maryland Casualty has been sued as an alleged insurer of Marquette. Maryland Casualty issued comprehensive general liability policies to Marquette which were effective from 1-1-70 through 1-1-76 and from 1-1-78 through 1-1-80. Mr. Coates worked for Marquette during parts of 1963, 1964, 1965 and 1967. The plaintiffs contend that Marquette supplied asbestos containing material to work sites at which Mr. Coates was present. Petition [Paragraph] 5. However, the plaintiffs have developed no evidence to support this allegation.
The policies are listed in a footnote by number and effective date. However, there is no verification of this information and Maryland Casualty did not file certified copies or originals of these policies. Furthermore, the record contains no verified evidence tending to support the factual allegations made by the moving party, Maryland Casualty, or its insured, Marquette.
Plaintiffs supplied deposition testimony and testimony taken in other court proceedings in opposition to the motion for summary judgment.

STANDARD OF REVIEW AND BURDEN OF PROOF
Appellate courts review summary judgment de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/2000), 755 So.2d 226, 230.
The summary judgment procedure is designed to secure the just, speedy, *753 and inexpensive determination of actions such as this. The procedure is favored and shall be construed to accomplish these ends. LSA-C.C.P. art. 966 A.(2). A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966 B. A fact is material if it is essential to a plaintiff's cause of action under the applicable theory of recovery and without which plaintiff could not prevail. Generally, material facts are those that potentially insure or preclude recovery, affect the litigant's ultimate success, or determine the outcome of a legal dispute. Prado v. Sloman Neptun Schiffahrts, A.G., 611 So.2d 691, 699 (La.App. 4 Cir.1992), writ not considered 613 So.2d 986 (La.1993).
Under the revised law, the burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. LSA-C.C.P. art. 966 C(2).
An adverse party to a supported motion for summary judgment may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided by law, must set forth specific facts showing that there is a genuine issue of material fact for trial. LSA-C.C.P. art. 967; Townley v. City of Iowa, 97-493 (La.App. 3 Cir. 10/29/97), 702 So.2d 323, 326.
The jurisprudential presumption against granting the summary judgment was legislatively overruled by LSA-C.C.P. art. 966 as amended. The amendment levels the playing field between the parties, with the supporting documentation submitted by the parties to be scrutinized equally and the removal of the overriding presumption in favor of trial. However, even under the amended statute, the initial burden of proof remains with the mover to show that no genuine issue of material fact exists. Under LSA-C.C.P. art. 966(C), once mover has made a prima facie showing that the motion should be granted, the burden shifts to the nonmoving party to present evidence demonstrating that material factual issues remain. Once mover has properly supported the motion for summary judgment, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. The amendment to LSA-C.C.P. art. 966 brings Louisiana's standard for summary judgment closely in line with the federal standard under Fed.Rule Civ.Proc. 56(c). Hayes v. Autin, 96-287 (La.App.3 Cir. 12/26/96), 685 So.2d 691, 694, writ denied, 97-0281 (La.3/14/97), 690 So.2d 41. The summary judgment law was amended by La.Acts No. 483 of 1997 to incorporate the Hayes analysis.
Under Fed.Rule Civ.Proc. 56, when the nonmoving party bears the burden of proof at trial, there is no genuine issue of material fact if the nonmoving party cannot come forward at the summary judgment stage with evidence of sufficient quantity and quality for a reasonable juror to find that the party can satisfy his substantive *754 evidentiary burden. In construing the federal summary judgment rule, the United States Supreme Court held that summary judgment shall be granted where the evidence is such that it would require a directed verdict for the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If a defendant in an ordinary civil case moves for summary judgment or a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the non-moving party on the evidence presented. Id. The Anderson court further held that the mere existence of a scintilla of evidence on the non-moving party's position would be insufficient; there must be evidence on which the jury could reasonably find for that party. In Lujan v. National Wildlife, 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990), the court held that Fed.Rule Civ.Proc. 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof. Berzas v. OXY USA, Inc., 29,835 (La.App. 2 Cir. 9/24/97), 699 So.2d 1149, 1152-53; Martello v. State Farm Fire & Cas. Co., 96 2375 (La.App. 1 Cir. 11/07/97), 702 So.2d 1179, 1183-84.
A motion for summary judgment is not appropriate, generally, for disposition of cases requiring a judicial determination of subjective facts, e.g., motive, intent, good faith, knowledge. Jefferson Parish School Bd. v. Rowley Co., Inc., 305 So.2d 658, 663 (La.App. 4 Cir.1974); Butler v. Travelers Ins. Co., 233 So.2d 271 (La.App. 1 Cir.1970).
MARYLAND CASUALTY COMPANY'S ASSIGNMENT OF ERROR: The trial court erred in failing to grant Maryland Casualty's motion for summary judgment and in failing to order the dismissal of the plaintiffs' claims against this defendant.[1]
Maryland Casualty contends that their insured, Marquette, was immune to the claim for injuries allegedly occurring during the time period in which Mr. Coates was employed by Marquette, and that plaintiffs cannot establish that Mr. Coates was exposed to any Marquette products during any time other than when he was Marquette's employee.
On the record before us, Maryland Casualty has failed to carry its burden of proof. We find no affidavit or other sworn testimony to have been submitted by Maryland Casualty. Clearly, under the amended summary judgment law, although summary judgments are favored, the moving party continues to have the initial burden of proving that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. In the absence of any authenticated evidence in support of the motion for summary judgment, we must conclude that the mover did not carry this burden below. Simply stated, mover did not submit a supported motion for summary judgment. Having made no prima facie case, mover did not cause the burden of proof to shift to the plaintiffs. We are mindful that this is not a trial proceeding, in which plaintiffs will *755 have the initial burden of proving their case. Unless and until the summary judgment mover makes his showing, the plaintiffs at this point in the proceeding need not come forward with contradictory evidence.
Likewise, this case is not before us on an exception of no cause of action, which would test the sufficiency of the plaintiffs' petition. The legal arguments advanced by Maryland Casualty, in the absence of supporting evidence, possibly would have been addressed more appropriately by way of such an exception, but are not before us in the context of the motion for summary judgment on appeal herein.
Furthermore, since Marquette's prior knowledge of the danger inherent in working with products containing asbestos and its intentional misrepresentation of that inherent danger are at the very heart of plaintiffs' claim, these aspects of the case are inappropriate for resolution by means of summary judgment.
Maryland Casualty's assignment of error is without merit.
PLAINTIFFS' ASSIGNMENT OF ERROR: The trial court erred in granting defendants' motion for summary judgment dismissing plaintiffs' claims for attorney's fees against all moving defendants.
Much of the defendants' argument concerning the attorney's fee issue is addressed to the lack of merit of plaintiffs' fraud claim. The trial court denied summary judgment on the fraud issue. Since that portion of the trial court judgment was not appealed, the merits of plaintiffs' fraud claim will be determined at trial. For purposes of plaintiffs' appeal of the attorney's fees judgment, the fraud issue remains undecided.
We note that the plaintiffs did not appeal from the trial court's judgment granting defendants' motion for summary judgment dismissing plaintiffs' claims of intentional tort. Therefore, we shall not consider plaintiffs' argument grounding their right to attorneys' fees on intentional tort.
Clearly, Louisiana courts may not award attorneys' fees except where they are provided for by contract or by statute. It is evident that plaintiffs' causes of action do not arise from contract. Plaintiffs argue that LSA-C.C. arts. 1953 and 1958 relating to fraud provide a statutory basis for such an award.
These articles were placed in Title IV of the Civil Code, entitled "Conventional Obligations or Contracts." Article 1953 appears as section 2 under Chapter 4, "Vices of Consent" and relates to that fraud that is a vice of contractual consent. Such fraud is defined as a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. LSA-C.C. art. 1953. This fraud may also result from silence or inaction. Id. Planiol defines fraud as "every deceit committed in the conclusion of juridical acts." M. Planiol, Treatise on the Civil Law, Vol. 2, Part 1, No. 1060. This passage is found in Part 3, entitled "ContractsGeneral Theory", of Planiol's treatise.
The Louisiana fraud article, LSA-C.C. 1953 does not, by its own terms, authorize an award of attorneys' fees. However, LSA-C.C. art.1958 provides:
The party against whom recission is granted because of fraud is liable for damages and attorney fees.
This article is also a part of Title IV, Chapter 4, section 2 and refers to the type of fraud that is a vice of contractual consent. *756 LSA-C.C. art. 1958's attorneys' fee provision was added in 1984. According to the Official Comment:
(a) This Article is new. It expresses an idea which is implied in C.C. Art. 1847(9) (1870) [now LSA-C.C. arts. 1953, 1955 and 1956] and is exemplified in C.C. Art. 2547 [subject matter of which is no longer contained in the Code], as amended by Acts 1968, No. 84. It changes the law in part, authorizing the award of attorney's fees consistently with the amendment to C.C. Arts. 2545 and 2547 by Acts. 1968, No. 84.
LSA-C.C. art. 2545 is found in Title VII, "Of Sale", Chapter 9, entitled, "Redhibition." It likewise bears no relationship to the plaintiffs' various remaining claims.
Plaintiffs have not asserted claims under the conventional obligations or sale provisions of the civil code. The civil code provides for attorneys' fees not for all cases of fraud, but only for those for which the remedy is recission. LSA-C.C. art. 1958.
Plaintiff relies on Bunge Corp. v. GATX Corp., 557 So.2d 1376, 1383 (La.1990). The issue in that case was whether an assertion of fraud would toll a ten-year peremptive period. Plaintiffs' claims sounded in redhibition, express and implied warranty, and contract, as well as in tort, res ipsa loquitur and strict liability. The supreme court did not address the issue of attorneys' fees, which would have been recoverable under the redhibition and contractual fraud causes of action. We are not persuaded that this opinion extends to authorize imposition of attorney's fees absent a finding of redhibitory defect or fraud justifying recission of the underlying construction contract.
Plaintiffs also rely on Pittman v. Piper, 542 So.2d 700, 702 (La.App. 4 Cir.1989). An auto repairman sued the maker of two checks who stopped payment. The trial court had maintained exceptions of vagueness and no cause of action. This Court noted that Louisiana recognizes a cause of action for intentional fraudulent misrepresentation, and allows recovery of damages for one who is injured by such fraud. This Court did not state or imply that, absent a contractual basis, attorneys' fees would be awarded in a pure tort suit based on non-contractual fraud.
Plaintiff cites Haggerty v. March, 480 So.2d 1064, 1067 (La.App. 5 Cir.1985). While the opinion recognizes that there may be an action for breach of contract or for tort based on fraud, it does not suggest that a non-contractual fraud gives rise to liability for attorneys' fees. Indeed, the court recognized that elements of damage for the two types of fraud may differ, holding:
If plaintiff's cause is under an action in contract his damages would be limited to actual pecuniary losses actually proven. However, if the action is brought in tort under La.C.C. Article 2315, the plaintiff may recover non-pecuniary damages.
We do not read "non-pecuniary" to include attorneys' fees not otherwise provided for by contract or statute.
MCS-1 Ltd. Partnership v. Progressive Bank & Trust Co., 93 1404 (La.App. 1 Cir. 5/20/94), 637 So.2d 782, writ denied 94-1622 (La.9/30/94), 642 So.2d 878, provides no support for plaintiffs. Like the other cases cited by plaintiffs in brief, this opinion does not hold that non-contractual fraud gives rise to a claim for attorneys' fees. The court recognizes the well-accepted concepts that negligent misrepresentation and fraudulent misrepresentation are torts, and that detrimental reliance is not based on an intent to be bound and does not require the existence of a valid contract. However, it does not take the next step, as suggested by plaintiffs herein, *757 to provide for attorneys' fees absent contractual fraud.
There is no suggestion that plaintiffs would be entitled to recission of any contract with the defendants. While a trial on the merits may prove their entitlement to actual and non-pecuniary damages arising from detrimental reliance on defendants' fraudulent misrepresentations, sounding in tort, we agree with the trial court that LSA-C.C. arts. 1953 and 1958 are inapplicable, and plaintiffs do not have a valid claim for attorneys' fees.
Plaintiffs' assignment of error is without merit.

CONCLUSION AND DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed against the appellants.
AFFIRMED.
NOTES
[1] Maryland Casualty argues in brief that the immunity provisions of Louisiana law bar Mrs. Coates' claims for loss of consortium. However, this issue was not briefed below and there is no reference to Mrs. Coates' claims in the judgment. Therefore, we will not consider this argument on appeal.