526 So.2d 345 (1988)
210 BARONNE STREET LIMITED
v.
Charles J. PISANO.
No. CA-8841.
Court of Appeal of Louisiana, Fourth Circuit.
May 12, 1988.
*346 Matt Greenbaum, Rudolph R. Schoemann, Schoemann & Associates, New Orleans, for plaintiff.
Olden C. Toups, Jr., New Orleans, for defendant.
Before GARRISON, BARRY and ARMSTRONG, JJ.
BARRY, Judge.
210 Baronne Street Limited Partnership appeals the dismissal of its suit against Charles Pisano which is based on his default of their extended written lease.
Pisano signed a three year lease with Richards Center, Inc. for offices 901-15, 902, 903, 916 and 917 in the First National Bank of Commerce Building commencing February 1, 1978. The base monthly rental was $629.30 to be increased on August 1, 1978 with subsequent increases tied to the Consumer Price Index. Paragraph 36 is an Automatic Renewal of Lease clause which provides:
This entire lease agreement, including the provisions of paragraphs 3A and 3B, shall automatically renew itself on the same terms and conditions as provided in this lease unless either party notifies the other in writing of such party's intention not to renew this lease on or before ninety (90) days prior to the expiration date of this lease.
On March 10, 1982 Pisano and Richards Center entered into Rider A whereby the parties agreed to change the term from three to one year through January 31, 1983. On October 17, 1984 Pisano sent a letter to Bob Willard, the listing agent and manager of Richards Center, Inc., which reads:
Find attached hereto my notice indicating that I will not be renewing my lease for 1985. As I explained to you on the phone the other day, I am giving this notice out of an abundance of caution but I am hopefull [sic] that I will be able to *347 retain all of the offices. Please check with me before you attempt to rent any of the space out. Thank you
Attached was another letter also dated October 17, 1984:
Be informed that I will not be renewing my lease which expires February 1 of 1985, on Suites XXX-XXX-XXX, XXX-XXX-XXX, in the First National Bank of Commerce Building.
On December 2, 1984, prior to expiration of the current one year term (January 31, 1985), Pisano wrote a third letter to Mr. Willard:
Find enclosed herein my check for one months rent. I will have the settlement on my ship collision case within the next thirty to forty five days according to the defense attorneys. I will get caught up with the rent permanently at that time.
In addition, I have decided to stay in all the offices I now rent for at least another year. I believe my lease expires on February 1st [sic] if you need a new lease signed or a renewal signed please send down the appropriate documents.
As always thank you and the Richards Center for your patience.
Richards Center never responded to the December 2, 1984 letter. On April 30, 1985 Richards Center, by act of sale, assigned Pisano's lease to 210 Baronne Street Limited Partnership. In a June 20, 1985 letter Pisano informed the management that he would remove furniture and equipment on June 22, 23 and 29. On August 27, 1985 Pisano's request to sublease Suite 903 was granted. In a November 18, 1985 letter Pisano advised that on November 23 and 24 and/or November 30 and December 1 he would remove more furniture and equipment.
On December 6, 1985 Pisano sent another letter:
This is to inform you that I have vacated the premises at Suite 901, 210 Baronne Street effective December 1, 1985.
210 Baronne sent Pisano a letter advising that it was accelerating the rent and demanded the full amount owed or it would sue. 210 Baronne Street filed suit for delinquent rent and damages, alleging the lease was in effect through January 31, 1987. Pisano reconvened claiming he made $10,000 worth of improvements to the premises. The trial court rendered judgment in favor of Pisano on the original claim and dismissed his reconventional demand. Pisano did not appeal or answer this appeal.
210 Baronne Street specifies eight errors: (1), (2), (4) and (6) failure to award rent from January, 1986 to January, 1987, and dismissal of the main demand; (3) failure to find that the lease was automatically renewed; (5) failure to award the rent for November and December, 1985; (7) and (8) failure to award eight percent (8%) interest on the rent from due dates, legal interest from the filing date, and ten percent (10%) attorney's fees. Pisano responds that (7) and (8) are not briefed and should be considered abandoned.
Legal reconduction of a lease occurs when a fixed term expires and the lessee continues to occupy the premises for more than a week without opposition by the lessor. The reconducted lease is a continuation of the lease under the same terms and conditions except that the old lease's fixed term is voided. The reconducted lease is considered to be month to month. La.C.C. Arts. 2685 and 2689. Southern Ventures Corporation v. Texaco, Inc., 372 So.2d 1228, 1230 (La.1979), quoting Governor Claiborne Apartments, Inc. v. Attaldo, 256 La. 218, 235 So.2d 574, 576 (1970).
210 Baronne argues that Pisano cancelled his termination notice by sending the December 2, 1984 letter prior to expiration of the lease. Thus, the automatic renewal clause is applicable and the lease was extended an additional year until January 31, 1987. 210 Baronne contends that action prevented reconduction of the lease. We disagree.
Based on the written lease requirements, the October 17, 1984 termination notice was timely, i.e., more than 90 days prior to the January 31, 1985 expiration which negated the automatic renewal clause. The trial court found Pisano properly notified 210 Baronne that he would not *348 renew the lease and concluded Pisano's subsequent letter was merely an offer to remain for an additional year. 210 Baronne never responded and Pisano remained after the expiration date with 210 Baronne's acquiescence.
Therefore, the written lease expired January 31, 1985, but was reconducted based on its original provisions except for the term. At that point the term was month to month under La.C.C. Arts. 2685 and 2689. See D'Antonio v. Talley, 297 So.2d 217 (La.App. 4th Cir.1974).
The fact that 210 Baronne granted Pisano's request to sublease Suite 903 in August, 1985 did not have the effect of renewing the one year written lease which had terminated January 31, 1985. See Miller v. G. & S. Implement Company, Inc., 311 So.2d 553 (La.App. 3rd Cir.1975). The sublease would be on a month to month basis since Pisano, as lessee, had a reconducted lease. 210 Baronne's letter in August, 1985 which noted the lease agreement commenced February 1, 1985 and expired January 31, 1986 also had no effect on the terminated lease. Specifications 1-4 and 6 lack merit.
Under La.C.C. Art. 2689 a tacitly reconducted lease continues until put to an end under La.C.C. Art. 2686, which provides that "the party desiring to put an end to it must give notice in writing to the other, at least ten days before the expiration of the month, which has begun to run." Becker & Associates, Inc. v. Lou-Ark Equipment Rentals Co., Inc., 331 So. 2d 474 (La.1976); Garner v. Perrin, 403 So.2d 814 (La.App. 2d Cir.1981).
Pisano paid monthly rent through October, 1985. He did not send timely notice that he had vacated until December 6, 1985. That letter constituted timely notice to terminate the month to month lease as of January, 1986 since it was sent more than ten days before the end of December, 1985.
Thus, the trial court erred by not awarding 210 Baronne Street the rent for November and December, 1985 and applicable interest and attorney's fees. Specifications 7 and 8 are argued in the brief, although not in detail in a lengthy analysis. Interest on the rent at eight percent (8%) per annum from the due date until filing of suit is appropriate pursuant to Provision 4. 210 Baronne states its demand includes 8% per annum interest. Under Provision 28, attorney's fees are ten percent (10%) of the amount due.
Dismissal of the original demand is reversed. Judgment is rendered in favor of 210 Baronne Street Limited Partnership and against Charles Pisano in the amount of $2,448.61 (as prayed for) with additional interest if due and ten percent (10%) attorney's fees. Each party to pay its own costs.
REVERSED AND RENDERED.