DUFRESNE, Judge.
This is an appeal by Business Credit Leasing, Inc. (BCL), assignee of an office copy machine “financed lease”, from a judgment effectively cancelling that lease and ordering return to the lessee of rental payments already made. The basis for this judgment was that the machine was defective at the start of the lease and thus did not comply with the lessor’s warranty of serviceability implicit in all leases. The trial judge noted that the lease contained a waiver of all such warranties, express or implied, but ruled this clause unenforceable because it had not been pointed out to the lessee. However, because the lessee admitted that although the waiver had not been pointed out to him he had nonetheless seen and read it, the trial judge’s ruling must be reversed and judgment entered instead in favor of BCL as per the terms of the lease.
The facts are straightforward. In early 1989, Sidney Angelle, a partner in the law firm of Lobman, Carnahan and Batt, was given the task of procuring a replacement for the firm’s inadequate copy machine. He contacted John Economy, president of Copy Machine Exchange, Inc. (CME), a dealer in used copy machines, and informed him that his office needed a copier with a 50,000 page per month capacity. Economy showed Angelle the manufacturer’s specifications for a Canon *1197 7550 (which listed a capacity of 10,000 to 70,000 copies per month) and indicated that this machine would serve the law office’s needs.
Economy apparently then turned Angelle over to a CME salesman, Kirk McDow, who demonstrated the used machine and took over completion of the transaction. The machine was delivered on April 15, and the paperwork was done two days later.
The agreement at issue here, signed by Angelle on April 17, is styled “Equipment Lease Agreement” and identifies the copier by model and serial number. The “lessee” is Lobman, Carnahan, & Batt, the “supplier” is Copy Machine Exchange, and the “lessor” is Amerilease Financial Corporation. On the front of the document in bold print appear the words “Terms and Conditions”, and paragraphs 1, 2 and 3 of these terms are followed by “(continued on back)”. Paragraph 6 on the back states as follows:
6. WARRANTIES. Lessee agrees that it has selected each item of Equipment based upon its own judgment and disclaims any reliance upon any statements or representations made by Lessor, LESSOR MAKES NO WARRANTY WITH RESPECT TO THE EQUIPMENT, EXPRESS OR IMPLIED, AND LESSOR SPECIFICALLY DISCLAIMS ANY WARRANTY OF MERCHANTABILITY AND OF FITNESS FOR A PARTICULAR PURPOSE AND ANY LIABILITY FOR CONSEQUENTIAL DAMAGES ARISING OUT OF THE USE OF OR THE INABILITY TO USE THE EQUIPMENT. Lessee agrees to make the rental and other payments required hereunder without regard to the condition of the Equipment and to look only to persons other than Lessor such as the manufacturer, vendor or carrier thereof should any Item of Equipment for any reason be defective. So long as no Event of Default has occurred and is continuing, Lessor agrees to the extent they are assignable to assign to Lessee, without any recourse to Lessor, any warranty received by Lessor. SUPPLIER IS NOT AN AGENT OF LESSOR, AND LESSEE SHALL HAVE NO RIGHT TO RELY ON STATEMENTS OR REPRESENTATIONS MADE BY SUPPLIER. Lessor assumes no responsibility for the installation, adjusting or servicing of the Equipment.
The lease amount was for thirty-six monthly payments of $235.03, or $8,461.08, with an option to purchase the machine for $1.00 at the lease’s end. The estimated value of the machine at the beginning of the lease was about $6,000.
Other evidence showed that Angelle paid Amerilease a deposit of the first and last months rental, and that Amerilease immediately assigned the lease, as well as ownership of the machine, to BCL. All four subsequent lease payments were paid by Angelle directly to BCL.
As to the serviceability of the machine, the evidence was clear that it malfunctioned repeatedly, and in its few months of use, it produced only some 13,000 copies per month, rather than the needed 50,000. After some ten service calls by CMR repairmen the machine was still not working properly. At that point, Angelle notified John Economy to pick up the copier, which was eventually done, and he also stopped making rental payments to BCL.
BCL brought suit against Lobman, Carna-han and Batt for accelerated rent payments plus interest, costs and attorney fees, all as provided in the lease in the event of default. The law firm reconvened against BCL and additionally asserted demands against John Economy, CMR and Amerilease, for return of rents already paid and other expenses associated with its use of the defective machine.
After a bench trial, the trial judge found that the machine was defective from the beginning of the lease. He further stated in his reasons for judgment the following:
Even though the lease includes a waiver of warranties, the court finds that all warranties were not waived. Waivers of warran *1198 ties may be valid only if they are contained in the contract, clear and unambiguous, and brought to the attention of the vendee or lessee. Prince v. Paretti Pontiac Co., Inc., 281 So.2d 112 (La.1973). The court finds this was not done in this case. There was no testimony that the waiver was pointed out to the lessee, even though the lessee is an attorney.
He therefore refused to give effect to the waiver of warranties, and entered a judgment of $1,800 in favor of the law firm and against BCL, Amerilease and CME, in soli-do. He also found that John Economy was not personally liable and so dismissed him from the suit. Only BCL appeals this judgment.
The statutory laws applicable to this matter are La.R.S. 9:3301, et seq., which govern leases of movables between July 1985 and the effective date of chapter 9 of the Louisiana Commercial Laws.
Section 3306(12) pertinently defines a “financed lease” as one in which a) the total rent payments over the term of the lease equal or exceed the value of the leased property, and b) the lessee must, or has the option to, buy the property for no, or nominal, consideration at the end of the lease. Section 3310, provides that financed leases are generally governed by Title IX of Book III of the Civil Code entitled “Of Leases”. The provision of the Civil Code implicated in this case is Article 2695, which provides that the lessor guarantees the lessee against all defects in the leased thing which prevent its being used for the purpose for which it was hired.
The leading case on application of Article 2695, is Louisiana National Leasing Corp. v. ADF Services, Inc., 377 So.2d 92 (La.1979). The facts of that case are remarkably similar to the present matter. There a law firm leased a copy machine and stopped paying rent when the machine malfunctioned. The lessor sued for accelerated rent and pointed out that the lease agreement contained an unambiguous waiver of all warranties against vices and defects in the leased thing. The appellate court ruled that such a clause was against public policy because it permitted the lessor to collect rent for the whole term of the lease while imposing no obligations upon it, and at the same time obligated the lessee to pay rent for an unusable thing, 371 So.2d 373 (La.App. 4th. Cir.1979).
The supreme court reversed this ruling and held that the waiver of warranties in the lease in question was enforceable and not against public policy. It pointed out that the lessor in the case was actually the financial medium through which the law firm was able to acquire the machine, and noted that the lessor assigned to the lessee all warranties which flowed from its purchase of the machine from the supplier. Implicit in this analysis was that because the lessee is protected against defects in the equipment leased via the redhibitory action against the real vendor/supplier, the inequity perceived by the appellate court between lessor and lessee did not actually exist.
The court did reiterate, however, that before any waiver of warranties can be given effect, the clause must be contained in the document, be clear and unambiguous, and be brought to the lessee’s attention or explained to him, citing Prince v. Paretti Pontiac Co., Inc., 281 So.2d 112 (La.1972). In upholding the clause at issue, the court recited that on the face of the lease, in bold type, appeared a reference to terms and conditions appearing on the back of the document, and among these conditions were the waiver of warranties and the assignment of all warranties of fitness provided by the vendor/supplier. As to the clause being brought to the lessee’s attention, the court noted that the person signing the lease for the lessee was an attorney, that the lease was a commercial, rather than a consumer transaction, and that the bold lettering on the front of the lease was sufficient to call attention to the terms appearing on the reverse side.
We finally note that although Louisiana National Leasing, supra, was decided before enactment of La.R.S. 9:3301, et seq., *1199 the Louisiana Lease of Movables Act, that jurisprudence is also applicable to leases con-fected under the above legislation, cf. First Continental Leasing Corp. v. Howard, 618 So.2d 642 (La.App. 2nd Cir.1993).
Because the entire transaction in the present matter has already been shown to be indistinguishable from that of Louisiana National Leasing Corp., Inc., supra, we need not repeat those particular facts here. What we do need to address in more detail, however, is the trial judge’s finding that the waiver of warranties clause was not pointed out to the lessee, and was therefore not enforceable. The pertinent testimony on direct examination of Angelle, an attorney, was as follows:
Q. When you were shown this [lease], I think you testified that you saw it and obviously you signed it, did anyone point out to you on the back and it’s in very fine print, I think it was item number 6 or so on the back of the form, any of the warranty or waiver of warranty provision of the—
A. It wasn’t pointed out, but I did read the document and I saw that there was language of the waiver of warranties and all of that and I made a remark to Kirk [McDow] that under Louisiana law you can’t waive basic warranties of fitness.
The evidence does not show that Angelle sought to have the waiver clause removed or amended, or that he further objected to it. Instead, he simply signed the lease as it was. In this court’s opinion, the requirement of Prince v. Paretti Pontiac Co., Inc., supra, that the waiver clause be brought to the lessee’s attention, was without question met by Angelle’s own admission. There being no other legal impediments to enforcement of the waiver clause, we must reverse the judgment of the trial judge and give that clause, as well as the entire lease, effect against the lessee.
When BCL brought suit on the lease in December, 1989, the law firm had missed two $234.03 monthly payments, thus triggering a late fee of $35.25 for each of the two months, making a total owing of $540.56. The remaining 28 payments come to $6,580.84, making a total of $7121.40. The lease further provided for reasonable attorney fees in the event of a breach, which we hereby fix at $1,000 for work in the district court and an additional $500 for work done in this court.
For the foregoing reasons, we vacate the judgment of the trial court in so far as it casts Business Credit Leasing, Inc. in judgment in favor of Lobman, Carnahan & Batt on the latter’s reconventional demand. We further hereby enter judgment in favor of Business Credit Leasing, Inc. in its main demand against Lobman, Carnahan & Batt, a Professional Law Corporation in the amount of $7121.40, with judicial interest from date of demand, attorney fees in the amount of $1500, and all costs of these proceedings in both the district court and in this court. In all other respects, the judgment of the district court is affirmed.

JUDGMENT OF DISTRICT COURT VACATED, JUDGMENT RENDERED FOR APPELLANT.