804 So.2d 64 (2001)
Gay FORD
v.
Wayne J. BIENVENU, USAA Casualty Insurance Company, Harbor Homeowners Association and State Farm Fire and Casualty Insurance Company.
No. 2000-CA-2376.
Court of Appeal of Louisiana, Fourth Circuit.
August 29, 2001.
Writ Denied December 14, 2001.
*65 Martin S. Bohman, Marjorie A. McKeithen, Lisa M. Prater, McKeithen, McKeithen & Bohman, Baton Rouge, Counsel for Plaintiff/Appellant.
C. Gordon Johnson, Jr., James R. Nieset, Jr., Porteous, Hainkel, Johnson & Sarpy, New Orleans, Counsel for Defendant/Appellee.
Court composed of Judge STEVEN R. PLOTKIN, Judge MICHAEL E. KIRBY, Judge MAX N. TOBIAS, Jr.
PLOTKIN, Judge.
Plaintiff, Gay Ford (plaintiff), appeals the trial court's granting of summary judgment in favor of defendants Wayne Bienvenu (Bienvenu) and his insurer, USAA Property and Casualty Insurance Company (USAA). In addition, plaintiff appeals the trial court's denial of her motion for new trial.

STATEMENT OF FACTS
This litigation arises out of an August 1, 1993 fire at Unit 229 of the Harborview Condominium complex located on Lake Marina Avenue in New Orleans. Bienvenu was the owner of that unit. A policy of homeowner's insurance issued to Bienvenu by USAA was in effect on the date of *66 the fire. Plaintiff occupied the premises pursuant to the terms of a written lease. The lease provided for an automatic renewal on a month-to-month basis following the expiration of its initial one-year term. Plaintiff had been leasing the unit for almost seven years when the fire broke out. A post-fire investigation revealed that the most probable cause of the fire was a defect in the circuit breaker box located in the hall closet, and that the defect in all probability had existed since the breaker box had been installed approximately twenty years before. All of plaintiff's possessions were destroyed in the fire. Plaintiff filed this suit to recover for those losses. In addition to Bienvenu and USAA, plaintiff also named as defendants the Harbor Homeowner's Association (the Association) and its insurer, State Farm Fire and Casualty Company (State Farm). The Association and State Farm filed a cross-claim against Bienvenu and USAA seeking contractual indemnity and/or contribution.
Bienvenu and USAA moved for summary judgment seeking dismissal of plaintiff's claims against them based on La. R.S. 9:3221 and a provision of the lease which purported to shift responsibility for the condition of the leased premises from Bienvenu to plaintiff. The statute relied upon by Bienvenu and USAA provides:
The owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time.
La. R.S. 9:3221.
By its elimination of liability except when the owner/lessor knew or should have known of the defect, the statute abrogates strict liability leaving the owner/lessor liable only for negligence. Chau v. Takee Outee of Bourbon, Inc., 97-1166, p. 5 (La.App. 4 Cir. 2/11/98), 707 So.2d 495, 498.
The lease between plaintiff and Bienvenu contained the following provision:
Lessee assumes responsibility for the condition of the premises. Lessor will not be responsible for damage caused by leaks in the roof, by bursting of pipes by freezing or otherwise, or any vices or defects of the leased property, or the consequences thereof, except in case of positive neglect or failure to take action toward the remedying of such defects and the damage caused thereby. Should Lessee fail to promptly so notify Lessor, in writing, of any such defects, Lessee will become responsible for any damage resulting to Lessor or other parties.
Plaintiff opposed that motion and filed a cross-motion for summary judgment seeking to have the court enforce an express warranty provision of the lease whereby Bienvenu had warranted that the leased premises were in good condition. That express warranty provided as follows:
Lessor warrants that the leased premises are in good condition. Lessee accepts them in such condition and agrees to keep them in such condition during the term of the lease at his expense and to return them to Lessor in the same condition at the termination of the lease, normal decay, wear and tear excepted.
Plaintiff alleged that, because of that express warranty, Bienvenu and USAA were liable to her for all damages arising out of defects in the premises which caused the fire and which had existed since before she *67 entered into the lease. In the alternative, plaintiff sought to have the defenses afforded to Bienvenu and USAA by La. R.S. 9:3221 stricken.
In its January 20, 2000 judgment granting summary judgment in favor of Bienvenu and USAA, the trial court found that the lease provision in question "transferred responsibility for any and all vices or defects in the leased property from owner, defendant, to lessee, plaintiff." Finding that the lease was valid and not contrary to public policy, the question before the trial court was whether Bienvenu "should have known" of the defect which caused the fire.[1] In support of their motion, Bienvenu and USAA offered the deposition testimony of George Hero (Hero), the electrical engineer who conducted the post-fire investigation. According to Hero, the fire started as a result of arcing in an electric breaker box within the wall. Hero testified that there was no way that anyone could have known about the defect prior to the fire. Bienvenu also submitted an affidavit wherein he stated that he was never put on notice by plaintiff, her roommate, or anyone else, of any vices or defects of the kind alleged to have been the cause of the fire. Based on the deposition testimony of Hero and the failure of plaintiff to submit any evidence to contradict that testimony, the trial court granted summary judgment in favor of Bienvenu and USAA and denied plaintiff's cross-motion for summary judgment.
Plaintiff filed a Motion for New Trial/Rehearing.[2] Following a hearing, the trial court denied plaintiff's motion. That ruling was based on a finding that the provision in the lease purporting to transfer responsibility for the condition of the premises from Bienvenu to plaintiff was "clear and unambiguous and transfers liability to Gay Ford for the condition of the premises," and that "[i]t also transfers liability to Gay Ford for vices or defects in the leased property." Accordingly, the trial court held that "[s]ince Gay Ford assumed responsibility for the condition of the premises and for vices and defects in the premises, Wayne Bienvenu and USAA Casualty Insurance Company cannot be held liable for any damage sustained in the August 1, 1993 fire." The judgment denying plaintiff's Motion for New Trial/Rehearing was signed on April 18, 2000.
Plaintiff and defendants, Bienvenu and USAA, entered into a "Joint Stipulation by Affidavit Designating the Summary Judgment (of January 20, 2000) as a Final Judgment Pursuant to La.Code of Civil Procedure article 1915." On June 16, 2000, the trial judge signed a judgment ordering "that the summary judgment granted in favor of Wayne J. Bienvenu and USAA Casualty Insurance Company on January 20, 2000 is designated as [sic] final judgment immediately appealable under *68 Article 1915 of the Louisiana Code of Civil Procedure after an express determination that there is no just reason for delaying an appeal, and in accordance with the stipulation of the parties." Plaintiff filed a motion for devolutive appeal which the trial judge also signed on June 16, 2000.
In this appeal, plaintiff asserts the following assignments of error:
1) The trial judge erred in holding that the purported waiver of rights in the lease pursuant to La. R.S. 9:3221 was valid given that Gay Ford was unaware of the provision having never had it explained to her such that Wayne Bienvenu and his insurer, USAA, were entitled to summary judgment.
2) The trial court erred when she ignored the inherent ambiguity in the contract of lease between Gay Ford and Wayne Bienvenu and held that the transfer of liability was valid notwithstanding the express warranty to the contrary.

STANDARD OF REVIEW
Appellate courts review summary judgment de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226, 230.
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions. The procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966 A(2). A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 B.
The jurisprudential presumption against the granting of summary judgment was legislatively overruled by La. C.C.P. art 966 as amended. Further, the amendments level the playing field, with the supporting documentation submitted by the parties to be scrutinized equally. Under the amended statute, the initial burden of proof remains with the movant to show that no genuine issue of material fact exists. La. C.C.P. art. 966 C(2); Coates v. Anco Insulations, Inc., XXXX-XXXX, p.6 (La. App. 4 Cir. 3/21/01), 786 So.2d 749.
An adverse party to a supported motion for summary judgment may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided by law, must set forth specific facts showing that there is a genuine issue of material fact for trial. La. C.C.P. art. 967; Townley v. City of Iowa, 97-493 (La.App. 3 Cir. 10/29/97), 702 So.2d 323, 326. "Once mover has properly supported the motion for summary judgment, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion." Coates, supra at p.6, 786 So.2d at 753.

DISCUSSION

1. DID THE TRIAL COURT ERR IN HOLDING THAT THE WAIVER OF RIGHTS PROVISION IN THE LEASE WAS VALID, THEREBY ENTITLING BIENVENU AND USAA TO THE GRANTING OF SUMMARY JUDGMENT IN THEIR FAVOR?
Plaintiff admits that La. R.S. 9:3221 provides a mechanism for the transfer of responsibility for the condition of leased premises from a lessor to a lessee. Nevertheless, plaintiff asserts that the waiver of rights and transfer of liability provision *69 in the lease was not valid in this instance because it was not brought to her attention or explained to her when she entered into the lease.
Plaintiff claims that "although warranties and obligations imposed under the Civil Code may sometimes be waived, the waiver of warranties is only valid if they are clear and unambiguous and brought to the attention of the lessee." In support of that proposition plaintiff cites Business Credit Leasing v. Lobman, Carnahan & Batt, 93-842 (La.App. 5 Cir.1994), 635 So.2d 1196, and Prince v. Paretti Pontiac Co., Inc., 281 So.2d 112 (La.1973)[3].
Bienvenu and USAA argue that those cases are distinguishable because they involve the sale or lease of movables. We agree. Prince dealt with the sale of an automobile and was decided under the codal articles relating to "sales." La. C.C. art. 2548 provides that the parties to a sale may agree to an exclusion or limitation of the warranty against redhibitory defects, and the terms of such exclusion or limitation "must be clear and unambiguous and must be brought to the attention of the buyer." There is no similar provision contained in the codal articles relating to "lease." The Business Credit Leasing case dealt with the lease of a copy machine. Although the Fifth Circuit applied the requirement of Prince that the waiver clause be brought to the lessee's attention, we are not convinced that such requirement was applicable to the lease of a movable. Nonetheless, we find that the Prince and Business Credit Leasing cases do not provide the controlling law regarding the lease of an immovable.
Many Louisiana cases have upheld the validity of transfer of liability provisions, similar to the one at issue herein, in the context of a lease of immovable property. See, for example, Chau v. Takee Outee of Bourbon, Inc., supra (absentee co-owner let out on summary judgment due to lease provision shifting responsibility of premises to tenant); Muse v. Katz, 93-1066, 93-1067 (La.App. 4 Cir. 2/11/94), 632 So.2d 846 (tenant assumed responsibility for the condition of the property including all vices or defects, but owner/lessor not let out on summary judgment because genuine issue of material facts existed as to whether owner/lessor "should have known" of defects and whether fire originated in the premises that tenant contractually assumed responsibility for); and Tassin v. Slidell Mini Storage, Inc., 396 So.2d 1261 (La.1981)(even though lessees assumed responsibility for water damage caused by vice or defect in the premises by freely entering into warehouse agreements which clearly and unambiguously transferred such liability, owners/lessors were not relieved of implied warranty in lessees' favor where owners/lessors knew or should have known that storage units were defective).
In Tassin, the Supreme Court noted that:
[T]he usual warranties and obligations imposed under the codal articles and statutes dealing with lease may be waived or otherwise provided for by contractual agreement of the parties as long as such waiver or renunciation does not affect the rights of others and is not contrary to the public good.
Tassin, 396 So.2d at 1264 (citations omitted).
Plaintiff cites no cases requiring that a transfer of liability provision, pursuant to La. R.S. 9:3221, must be brought to the attention of or explained to the lessee.
We agree with the trial court's finding that the waiver of rights and transfer *70 of liability provision in the lease is valid. The language of the provision is clear and unambiguous. The law does not require that the provision be brought to plaintiff's attention or that it be explained to her. As a result of the waiver provision, Bienvenu and USAA are entitled to escape liability for defects in the property unless they knew or should have known of the defects or had received notice thereof and failed to remedy it within a reasonable time. La. R.S. 9:3221. Bienvenu provided the trial court with an affidavit wherein he stated that he knew of no such defect in the property, and that he had not been put on notice of any such defect by plaintiff or by anyone else. Defendants also provided the testimony of Hero, the fire investigator, which proved that no one could have known about the defect prior to the start of the fire. We agree with the trial court's conclusion that Bienvenu and USAA met their burden of proof, under La. R.S. 9:3221, that they neither knew nor should have known of the defect in the premises that caused the fire, and that they were entitled to summary judgment in their favor.

2. DID THE TRIAL COURT ERR IN HOLDING THAT THE TRANSFER OF LIABILITY FOR THE CONDITION OF THE PREMISES PROVISION IN THE LEASE WAS VALID NOTWITHSTANDING THE EXPRESS WARRANTY TO THE CONTRARY?
Plaintiff next argues that the trial court erred when it ignored the "inherent ambiguity" in the lease contract and held that the transfer of liability was valid notwithstanding the express warranty to the contrary.
Plaintiff points out that the warranty language was contained in a separate paragraph entitled "warranty" while the waiver of liability language was located several paragraphs later in the third paragraph of a section entitled "liability." Plaintiff additionally points out that where another important right was waived, that of receiving notice, such waiver was noted in a separate section entitled "waiver of notice." Plaintiff then cites various case law concerning the construction of contracts. See Lambert v. Maryland Cas. Co., 418 So.2d 553 (La. 1982)("A cardinal rule in the construction of contracts is that the contract must be viewed as a whole and, if possible, practical effect given to all its parts, according to each the sense that results from the entire agreement so as to avoid neutralizing or ignoring any of them or treating them as surplusage.") (citations omitted); Pique v. Saia, 450 So.2d 654 (La. 1984)(any ambiguity in an instrument is resolved against the drafter) (citations omitted).[4] Pursuant to those rules of construction, plaintiff contends that the only way to reconcile the two conflicting lease provisions is to hold that Bienvenu intended to warrant and be liable for defects existing before the inception of the lease, but that he intended to transfer liability for defects which arose after the inception of the lease for which he had no knowledge. Accordingly, plaintiff argues that the defect at issue herein clearly arose before the premises were leased to her and therefore such defect was not within the scope of the alleged transfer of liability, but rather was within the scope of the express warranty.
In opposition, Bienvenu and USAA argue that Hero's testimony proved, and plaintiff acknowledges, that there was no way for anyone to have known about the defect that caused the fire prior to the fire taking place. As such, they claim that the express warranty given by Bienvenu was valid. Bienvenu and USAA point out that *71 plaintiff's signature on the lease appears only inches below the phrase "READ YOUR LEASE BEFORE SIGNING." They then cite jurisprudence holding that a person who signs a written document is presumed to know and understand what he or she signs. Thomas v. Goodson, 26,356 (La.App. 2 Cir. 12/7/94), 647 So.2d 1192.
Although not referenced by either side in briefs, this Court has previously ruled on the issue now before us. In Phillips v. Mitthoff, 108 So.2d 669 (La.App.Orleans 1959), the Court was faced with interpreting a lease which contained a provision whereby the lessor warranted the leased premises to be in good condition, while subsequent provisions provided for the lessee to assume responsibility for most repairs and to assume liability for any damages sustained by the lessee or any other persons. The Court held that the warranty clause upon which plaintiff relied was nothing more than the warranty which, under our Civil Code, is written into every lease, and which may be nullified by stipulations authorized by La. R.S. 9:3221. Because the warranty clause appeared in the lease ahead of the waiver clauses relied upon by the defendants, and because the latter waiver clause seemed to contradict the earlier warranty clause, the Court held that the latter clauses would be controlling.[5] Accordingly, the Court affirmed the trial court's sustaining of the defendant owner/lessor's exception of no cause of action.
We agree with the trial court's finding that the waiver clause clearly and unambiguously transferred liability to plaintiff for the condition of the premises and that it further transferred liability to plaintiff for vices or defects in the leased property. Because plaintiff signed the lease, she was bound to both know and understand the provisions of the lease. We further find that the express warranty given by Bienvenu to plaintiff, that the premises were in good condition, was true when made, as the uncontroverted testimony of Hero, the fire investigator, proved that no one could have known of the defect in the breaker box prior to the fire. Although the lease appears to have contradictory provisions, we are bound by the holding of Phillips. Accordingly, we find that the waiver clause transferred liability to plaintiff for damages caused by defects in the leased property despite the earlier express warranty.

CONCLUSION
Accordingly, the trial court's granting of summary judgment is affirmed.
AFFIRMED.
NOTES
[1] As noted by the trial court in its judgment, the issue of whether Bienvenu "knew" of the defect was previously addressed by this Court in Ford v. Bienvenu, 95-1675 (La.App. 4 Cir. 4/24/96), 673 So.2d 1198. In that appeal, plaintiff sought review of an earlier summary judgment granted in favor of Bienvenu and USAA. After reviewing the affidavit submitted by Bienvenu (apparently the same one that was submitted in support of this motion), we found that Bienvenu had proven that he was not given notice of the defect in the premises, but we reversed the trial court's granting of summary judgment because we found the affidavit wholly inadequate to negate the possibility that he "should have known" of the defect in the premises.
[2] The Motion for New Trial/Rehearing was not designated by plaintiff to form a part of this record on appeal. Accordingly, the record does not reflect whether the motion was timely filed under La. C.C.P. art. 1974. We assume for purposes of this opinion that the motion was timely; if the motion was untimely, the plaintiff's appeal is untimely.
[3] This case has been superseded by statute.
[4] Plaintiff asserts in her brief to this Court that Bienvenu drafted the lease in question.
[5] In so deciding, the court relied on Terrenova v. Feldner, 28 So.2d 287 (La.App.Orleans 1946) wherein the Court held that as a result of a stipulation similar to the one at issue in Phillips, the lessee assumed responsibility for the vices and defects in the leased premises, despite a provision in the lease to the effect that the leased premises were accepted by the lessee in their present condition as being in good order.