**BENJAMIN F. CROSBY AND BENTEX ASSOCIATES, INC.**

**VERSUS**

**SAHUQUE REALTY COMPANY, INC., LATTER & BLUM PROPERTY MANAGEMENT, INC., ABC INSURANCE COMPANY AND XYZ INSURANCE COMPANY**

\*      **NO. 2021-CA-0167**

\*

\*      **COURT OF APPEAL**

\*      **FOURTH CIRCUIT**

\*      **STATE OF LOUISIANA**

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2009-11421 C\W 2010-06486, DIVISION "D"
Honorable Nakisha Ervin-Knott, Judge
\* \* \* \* \* \*
**Judge Tiffany Gautier Chase**
\* \* \* \* \* \*
(Court composed of Judge Roland L. Belsome, Judge Daniel L. Dysart, Judge Tiffany Gautier Chase)

Benjamin F. Crosby
7425 Wilson Road
West Palm Beach, FL 33413

     PLAINTIFF/APPELLANT

Lance B. Williams
Lynda A. Tafaro
McCRANIE SISTRUNK ANZELMO HARDY MCDANIEL & WELCH, LLC
909 Poydras Street, Suite 1000
New Orleans, LA 70112

     COUNSEL FOR DEFENDANT/APPELLEE

**AFFIRMED**
**OCTOBER 13, 2021**

*TGC*
*RLB*
*DLD*

Benjamin F. Crosby (hereinafter "Mr. Crosby")[1] seeks review of the trial

court's December 3, 2019 judgment granting Sahuque Realty Company, Inc.'s

(hereinafter "Sahuque") motion for summary judgment. After consideration of the

record before this Court and the applicable law, we affirm the judgment of the trial

court.

## Facts and Procedural History

The facts of this case have been previously articulated by this Court in 2017

in *Crosby v. Sahuque Realty Co., Inc.*:

> Mr. Crosby, an interior designer, founded his company Bentex, through which Mr. Crosby purchased textiles that Bentex would convert into draperies, rugs, upholstery, bedding, wall covering, and other furnishings. Bentex would then sell the finished products to hotels, cruise ships, and other buyers nationwide.
>
> Mr. Crosby leased three apartments owned by Sahuque, and later managed by Latter & Blum Property Management, Inc., at 708 Orleans Avenue in the New Orleans French Quarter. Mr. Crosby, whose primary residence is in Florida, used two of the apartments as his second home until September 2008. Bentex leased the third apartment for use as a decorated showroom.
>
> Mr. Crosby and Bentex initially entered into written lease contracts for the apartments. A provision included in the leases waived Sahuque's liability for "any injury or damages to any property or to any person on or about the leased premises or for any injury or

---

[1] Bentex Associates, Inc. (hereinafter "Bentex") was initially a party to this litigation. Bentex was dismissed, with prejudice, by the trial court's April 15, 2016 judgment.

1

damage to any property of lessee." The leases further stated that, if the property suffered partial but reparable destruction, the lessor could choose to cancel the lease or instead repair the damage after notification to the lessee. The leases also contained a provision that purported to release Sahuque of any responsibility for water damage "unless same is caused by lessor's failure to comply with any obligations expressly assumed in this lease." After the leases expired on December 31, 2004, Mr. Crosby and Bentex continued leasing the properties pursuant to an oral agreement on a month-to-month basis.

Sahuque admitted that on at least five occasions between 1995 and 2000, rain events caused water to flow into the apartments and cause damage to plaintiffs' property. During plaintiffs' occupancy, from the mid-1990s until June 2009, plaintiffs experienced water intrusion into the apartments that damaged plaintiffs' movable property, including interior furnishings, draperies, and artwork.

***

Plaintiffs filed their original petition [o]n October 26, 2009, alleging that defendants breached duties they owed pursuant to the lease contracts and under law. Plaintiffs alleged that despite repeated notice, defendants failed to make necessary repairs to weatherproof the leased property. Plaintiffs averred that the units became infested with mold, causing Mr. Crosby to seek medical treatment. The original petition sought damages for Mr. Crosby's personal injuries, medical expenses, and for mold contamination and resulting damages to personal property. Plaintiffs [also claimed] defendants failed to properly weatherproof and make necessary repairs to the leased property constituting a continuing tort, because the operating cause of the injury was ongoing and gave rise to successive damages. Defendants disputed plaintiffs' claims, arguing that the alleged damages resulted from the separate weather-related occurrences of water intrusion into the units, rather than from defendants' continuous tortious conduct. Defendants filed an exception of prescription, which the trial court granted; however, this Court reversed on appeal. [*Crosby v. Sahuque Realty Co., Inc.*, 2012-1537 (La.App. 4 Cir. 8/21/13), 122 So.3d 1197 (finding that the trial court relied on evidence not properly introduced into the record)].

Sahuque reasserted its exception of prescription on remand. The trial court found that because plaintiffs filed suit in October 2009, plaintiffs' claim regarding the January 2009 rain event was within the one-year liberative prescription period. The trial court also found that plaintiffs claim based on the August 2008 rain event was not prescribed. The trial court determined in light of the parties' January 2009 agreement, which Mr. Crosby memorialized, defendants had lulled plaintiffs into inaction, as contemplated by the doctrine of contra non valentum. Therefore, on April 2, 2014, the trial court

2

partially granted the exception, concluding that only plaintiffs' claims relating to the August 2008 and January 2009 rain events were not prescribed.

\*\*\*

Thereafter, Sahuque filed a motion for summary judgment. At the hearing, Sahuque argued that Mr. Crosby failed to produce an expert witness to establish that the August 2008 and January 2009 water intrusion events were the cause-in-fact of Mr. Crosby's damages. Mr. Crosby submitted an engineer report which he alleges established that the 2008 and 2009 water intrusion events caused the mold found in the units. Additionally, Mr. Crosby submitted a detailed, sworn affidavit, including specific statements that the August 2008 water intrusion event caused mold to propagate in the units, rendering his personal property toxic and unusable. Mr. Crosby also attached an inventory of the "personal property damaged by exterior water intrusion or mold infestation/contamination or both from August 21, 2008 forward to June, 2009."

The trial court found Mr. Crosby failed to establish what damages were caused by the non-prescribed August 2008 and January 2009 water intrusion events. The trial court also rejected Mr. Crosby's affidavit as "self-serving" and determined that Mr. Crosby failed to corroborate his testimony with the testimony or affidavit of an independent eye-witness. The trial court granted summary judgment in November 2016, and dismissed Mr. Crosby's remaining claims with prejudice.

*Crosby v. Sahuque Realty Co., Inc.*, 2017-0424, pp. 1-5 (La.App. 4 Cir. 12/28/17), 234 So.3d 1190, 1193-1195, *writ denied*, 2018-0183 (La. 3/23/18), 239 So.3d 294.

On appeal, this Court found no error in the trial court's ruling partially granting Sahuque's exception of prescription regarding Mr. Crosby's pre-2008 claims. *Id*., 2017-0424, p. 17, 234 So.3d at 1201. However, this Court determined that genuine issues of material fact existed regarding causation of damages to Mr. Crosby's movable property making summary judgment inappropriate. *Id*. As such, we reversed the trial court's November 2016 judgment and remanded the matter for further proceedings consistent with this Court's opinion. *Id*.

3

On June 3, 2019, Sahuque conducted a second deposition of Mr. Crosby.[2] This deposition focused primarily on Mr. Crosby's damages and the terms of the 2003 lease agreement between he and Sahuque.

On September 11, 2019, Sahuque filed a second motion for summary judgment arguing that no genuine issue of material fact exists as to the waiver of liability provided in three lease provisions of the 2003 lease agreement. Specifically, Sahuque maintained that Sections 19, 21, and 25 of the 2003 lease agreement preclude liability for Mr. Crosby's personal property damage claim. In support of its motion for summary judgment, Sahuque attached: (1) the 2019 deposition transcript of Mr. Crosby; (2) 2003 lease agreements for apartment A and apartments B and C; (3) the original and supplemental and amending petitions for damages; and (4) excerpts of Mr. Crosby's 2010 deposition.

Mr. Crosby opposed Sahuque's motion for summary judgment, arguing that the matter was not ripe for summary judgment because there are genuine issues of material fact as to the existence of a defect posing an unreasonable risk of harm; Sahuque's breach of warranty that the premises were free from defects and for failing to weatherproof the exterior of the building; the amount of damages recoverable; that the 2003 lease agreement does not contain a clear and unambiguous waiver of liability; and lack of adequate or substantial discovery. In support of his opposition, Mr. Crosby filed (1) the April 2, 2014 trial court judgment and reasons for judgment; (2) the supplemental and amending petition for damages; (3) his affidavit; (4) the Vieux Carre Commission permit; and (5) the March 24, 2014 trial court hearing transcript.

---

[2] Sahuque first conducted Mr. Crosby's deposition in 2010.

A hearing on Sahuque's motion for summary judgment was held on November 8, 2019. Mr. Crosby was not allowed to present argument to the trial court because his opposition to the motion for summary judgment was untimely. The hearing proceeded with only Sahuque's argument and no evidence was formally introduced into the record.[3] The trial court granted Sahuque's motion for summary judgment reasoning that by signing the 2003 lease agreement, Mr. Crosby accepted Sections 19, 21, and 25, relieving Sahuque of liability for property damage and accepted the property in its existing condition. The trial court's ruling was memorialized by judgment dated December 3, 2019. On April 23, 2021, the trial court issued a certification order designating the December 3, 2019 judgment as a final appealable judgment pursuant to La. C.C.P. art. 1915(B). This appeal followed.

**Standard of Review**

An appellate court reviews a trial court's decision to grant or deny a motion for summary judgment *de novo*. In *Chatelain*, this Court set forth the applicable standard of review as follows:

> Appellate courts review the grant or denial of a motion for summary judgment *de novo*, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. This standard of review requires the appellate court to look at the pleadings, depositions, answers to interrogatories, and admission on file, together

---

[3] La. C.C.P. art 966(D)(2) provides, in pertinent part, that "[t]he court may consider only those documents filed in support of or in opposition to the motion for summary judgement and shall consider any documents to which no objection is made. Any objection to a document shall be raised in a timely filed opposition or reply memorandum." La. C.C.P. art 966 "does not include a requirement that evidence be formally offered and introduced before a reviewing court may consider a motion for summary judgment." *Harvey v. Krouse*, 2017-0937, p. 8 (La.App. 4 Cir. 4/18/18), 244 So.3d 533, 538. As such, it was proper for the trial court to consider the documents attached to Sahuque's motion for summary judgment. Additionally, Sahuque timely filed a reply memorandum objecting to the documents filed with Mr. Crosby's summary judgment opposition. The record does not reflect whether or not the trial court considered the documents filed by Mr. Crosby.

with the affidavits, if any, to determine if they show that no genuine issue as to a material fact exists, and that the mover is entitled to judgment as a matter of law. A fact is material when its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable person could reach only one conclusion, no need for trial on that issue exists and summary judgment is appropriate. To affirm a summary judgment, we must find reasonable minds would inevitable conclude that the mover is entitled to judgment as a matter of the applicable law on the facts before the court.

*Chatelain v. Fluor Daniel Const. Co.*, 2014-1312, p. 3 (La.App. 4 Cir. 11/10/15), 179 So.3d 791, 793 (citations omitted).

## Summary Judgment

It is well settled that "[t]he summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action… ." La. C.C.P. art. 966(A)(2). The granting of a motion for summary judgment is contingent upon the pleadings, depositions, answers to discovery, admissions on file and affidavits demonstrating that there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. *Duboue v. CBS Outdoor, Inc.*, 2008-0715, p. 2 (La.App. 4 Cir. 10/1/08), 996 So.2d 561, 562. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could only reach one conclusion, there is no need for trial on that issue, and summary judgment is appropriate. *Smith v. Our Lady of the Lake Hosp., Inc.,* 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751. A fact is material when its existence or non-existence may be essential to the plaintiff's cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. *Chapital v. Harry Kelleher & Co., Inc.,* 2013-1606, p. 5 (La.App. 4 Cir. 6/4/14),

144 So.3d 75, 81 (quoting *Mandina, Inc., v. O'Brien,* 2013-0085, p. 8 (La.App. 4 Cir. 7/31/13), 156 So. 3d 99, 104). Whether a fact is material is a determination that must be made based upon the applicable substantive law. *Roadrunner Transp. Sys. v. Brown*, 2017-0040, p. 7 (La.App. 4 Cir. 5/10/17), 219 So.3d 1265, 1270.

On a motion for summary judgment the mover bears the burden of proof but is not required to negate all elements of the adverse party's claim if the mover will not bear the burden of proof at trial. La. C.C.P. art. 966 (D)(1). Thus, La. C.C.P. art 966,

> first places the burden of producing evidence at the hearing on the motion for summary judgment on the mover (normally the defendant), who can ordinarily meet that burden by submitting affidavits or by pointing out the lack of factual support for an essential element in the opponent's case. At that point, the party who bears the burden of persuasion at trial (usually the plaintiff) must come forth with evidence (affidavits or discovery responses) which demonstrates he or she will be able to meet the burden at trial.

*Babin v. Winn-Dixie Louisiana, Inc.*, 2000-0078, p. 4 (La. 6/30/00), 764 So.2d 37, 39. If the adverse party fails to set forth specific facts demonstrating a genuine issue of material fact, summary judgment shall be rendered against the adverse party if appropriate. La. C.C.P. art. 967(B).

## Discussion

On appeal Mr. Crosby presents one assignment of error, asserting the trial court erred in granting Sahuque's motion for summary judgment. Specifically, he maintains that summary judgment is inappropriate because the trial court failed to consider a 2009 agreement between the parties whereby Sahuque agreed to weatherproof the building (and complete additional repairs) in exchange for Mr. Crosby's waiver of any and all damages to his personal property. Mr. Crosby contends that the 2009 agreement creates a genuine issue of material fact as to the

7

liability of Sahuque for damages to his personal property. In order to fully address Mr. Crosby's sole assignment of error, we must first examine whether the 2003 lease agreement or the 2009 agreement applies to Mr. Crosby's claims.

**Lease Agreements Between the Parties**

Following a meeting between Mr. Crosby and Sahuque, regarding water intrusion inspection results, an agreement was reached for Sahuque to weatherproof the building and make additional repairs. *Crosby*, 2017-0424, p. 14, 234 So.3d at 1200. Upon completion of the repairs, Mr. Crosby agreed to execute a waiver for any damages to his personal property. *Id.* Mr. Crosby memorialized the agreement in a January 30, 2009 letter. *Id.*, 2017-0424, p. 15, 234 So.3d at 1200. It was not until May 2009 that Sahuque notified Mr. Crosby that it did not agree with the terms of the January 30, 2009 letter. *Id.* Mr. Crosby maintains that the 2009 agreement is applicable and not the 2003 lease agreement. Nevertheless, Mr. Crosby did not execute a separate waiver for damages in 2009 once Sahuque refused to agree to the terms memorialized in the January 30, 2009 letter. Mr. Crosby argues that the 2009 agreement creates a genuine issue of material fact as to whether a separate waiver exists for the August 2008 and January 2009 water intrusion events. Mr. Crosby's contention is pretermitted by the fact that the parties concede the damages at issue were the result of the August 2008 and January 2009 water intrusion events. Thus, the January 30, 2009 letter from Mr. Crosby and has no applicability to his damage claims.

On February 17, 2003, Mr. Crosby and Sahuque executed two lease agreements: one for apartment A, naming Bentex as the lessee; and one for apartments B and C, naming Mr. Crosby as the lessee. The leases contained identical terms and conditions.

The terms of the 2003 lease agreement extended from January 1, 2003 to December 31, 2004. At the conclusion of the 2003 lease term, the parties orally continued the lease agreement on a month-to-month basis. "A lease with a fixed term is reconducted if, after the expiration of the lease term, and without notice to vacate or terminate or other opposition by the lessor or the lessee, the lessee remains in possession:… (2) [f]or one week in the case of other leases with a fixed term that is longer than a week… ." La. C.C. art. 2721(2). "The reconducted lease is a continuation of the lease under the same terms and conditions except that the old leases's fixed term is voided." *210 Baronne St., Ltd. v. Pisano*, 526 So.2d 345, 347 (La.App. 4 Cir. 5/12/88). Neither Mr. Crosby nor Sahuque opposed continuation of the lease agreement. As such, the 2003 lease agreement was reconducted and the terms and provisions remained applicable for the duration of Mr. Crosby's use of the property. The 2009 agreement, whether agreed upon or not, does not negate the fact that the 2003 lease was reconducted as of January 1, 2005. As such, we find the terms and provisions of the 2003 lease agreement applicable at the time of the August 2008 and January 2009 water intrusion events.

## Waiver of Liability

Mr. Crosby asserts that he did not waive liability because of Sahuque's failure to adhere to the terms of the 2009 agreement. As stated above, the 2003 lease agreement applies to Mr. Crosby's claims which occurred in August 2008 and January 2009. Thus, we must now determine whether the waiver executed by Mr. Crosby precludes liability. The 2003 lease agreement contains the following provisions:

Lessee shall be in exclusive control and possession of the leased premises, and lessor shall not be liable for any injury or damages to any property or to any person on or about the leased premises or for any injury or damage to any property of lessee. Lessor shall not be liable to lessee for any entry on the premises for inspection purposes.

## SECTION TWENTY-ONE
## REPRESENTATIONS BY LESSOR

At the commencement of the term, lessee shall accept the buildings and improvements and any equipment in their existing condition and state of repair, and lessee agrees that no representations, statements, or warranties, express or implied, have been made by or on behalf of lessor in respect to the buildings, improvements and equipment, except as contained in the provisions of this lease agreement. Lessor shall in no event be liable for any latent defects.

## SECTION TWENTY-FIVE
## MISCELLANEOUS

A. In addition to any other obligations assumed in this lease agreement, lessee agrees to indemnify lessor for any and all damage caused to the walls or ceilings of the leased premises caused by the use of the leased premises by lessee, whether or not such use constitutes negligence. Lessor shall not be responsible for water damage unless same is caused by lessor's failure to comply with any obligations expressly assumed in this lease. Lessee is responsible for all damage caused by fire in the premises, including but not limited to, the repairs and replacement of painting, electrical system or flooring.

B. Lessee agrees not to display any merchandise on the sidewalk or anywhere on the exterior of the leased premises, Lessee is not permitted to sell food or beverages or prepare same. No open fires are permitted. No pets are allowed on the leased premises.

C. The lessor reserves the right to enforce or not enforce any of the rights and/or remedies provided to lessor by this lease agreement at any time, and lessor's decision not to enforce such right or remedy at any given time shall not constitute or be deemed to be a waiver of said right or remedy by lessor.

La. C.C. art. 2696 provides, in pertinent part, that "[t]he lessor warrants the

lessee that the thing is suitable for the purpose for which it was leased and that it is

free from vices or defects that prevent its use for that purpose." The aforementioned warranty "may be waived, but only by clear and unambiguous language that is brought to the attention of the lessee." La. C.C. art. 2699.

In the case *sub judice*, the waiver against vices and defects is contained in Sections 19, 21 and 25 of the 2003 lease agreement. Mr. Crosby does not dispute that he in fact signed the 2003 lease agreement. Although the 2003 lease agreement ended December 31, 2004, in his 2010 deposition Mr. Crosby testified that he understood he remained under the same terms and conditions of the 2003 lease agreement during the duration of his month-to-month lease. The language contained in the waiver clearly and unambiguously waives any claim for damages to Mr. Crosby's personal property against Sahuque as a result of water intrusion into the leased premises.

We likewise find no merit to Mr. Crosby's claim that the waiver of warranty is invalid because it was not brought to his attention. La. C.C. art. 2699 read *in pari materia* with La. R.S. 9:3221 provides a statutory exception to La. C.C. art. 2699, wherein the lessee assumes responsibility for the condition of the leased premises.[4] *See Williams v. Three Girls, L.L.C.*, 2013-1589, p. 8 (La.App. 4 Cir. 6/25/14), 142 So.3d 1071, 1075. Mr. Crosby waived his right to any damage claim to his personal property and assumed liability for the condition of the property through his acceptance of Sections 19, 21 and 25 of the 2003 lease agreement. "Louisiana cases have upheld the validity of transfer of liability provisions…in the context of a lease of immovable property." *Ford v. Bienvenu*, 2000-2376, pp. 7-8 (La.App. 4

---

[4] La. R.S. 9:3221:
Notwithstanding the provisions of [La. C.C. art.] 2699, the owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time.

Cir. 8/29/01), 804 So.2d 64; *See Chau v. Takee Outee of Bourbon, Inc.*, 1997-1166, p. 5 (La.App. 4 Cir. 2/11/98), 707 So.2d 495, 498. Further, "[t]he law does not require that the provision be brought to the plaintiff's attention or that it be explained… ." *Ford*, 2000-2376, pp. 8-9, 804 So.2d at 70.[5]

The warranty waiver contained in the 2003 lease agreement clearly and unambiguously excludes liability for damages caused by defects to the leased premises, i.e. water intrusion. The deposition testimony of Mr. Crosby, in 2019, further illustrates his consent to the waiver and acceptance of the existing condition of the premises. Mr. Crosby signed the lease and is thus "bound to know and understand the provisions of the lease." *Id.*, 2000-2376, p. 11, 804 So.2d at 71.

Accordingly, we find no genuine issue of material fact as to whether the waiver contained in the 2003 lease agreement, which excluded liability, applies to the August 2008 and January 2009 water intrusion events. As such, the trial court did not err in granting Sahuque's motion for summary judgment.

## Decree

For the foregoing reasons, we affirm the trial court's December 3, 2019 judgment granting Sahuque's motion for summary judgment.

## AFFIRMED

---

[5] La. C.C. art. 2699 was amended with an effective date of January 1, 2005 as follows:

The warranty provided in the preceding Articles may be waived, but only by clear and unambiguous language that is brought to the attention of the lessee. Nevertheless, a waiver is ineffective

(1) To the extent it pertains to vices or defects of which the lessee did not know and the lessor knew or should have known;
(2) To the extent it is contrary to the provisions of Article 2004; or
(3) In a residential or consumer lease, to the extent it purports to waive the warranty for vices or defects that seriously affect health or safety.