MARION F. EDWARDS, Judge.
 

 The issues in this appeal are whether there was sufficient notice to prevent the automatic renewal clause of a lease agreement to be activated and whether the sub-lessee is obligated to indemnify the subles-sor. The posture in which these questions are presented to us is by two judgments by the trial court granting a summary judgment in favor of plaintiff/appellee, Glenn Gennaro, and third-party defendant/appellee, Area 51, L.L.C. (“Area 51”), and denying a summary judgments filed by Royal Oldsmobile Company, Inc. (“Royal”). The trial court rulings relating to the summary judgments on appeal present issues of law only. The parties agree there are no material facts in dispute.
 

 On January 1, 1997, Glenn Gennaro (“Gennaro”) and Mr. and Mrs. Tony Gen-naro
 
 [1]
 
 entered into a lease (master lease) with Royal for property located on North Hullen Street in Metairie, Louisiana, adjacent to other property fronting Veterans Boulevard leased by Royal in 1965 from the Chehardy family (“the Chehardy Lease”). The lease was for ten years and provides that:
 

 If Lessee does not notify Lessor that they are vacating the premises on December 31, 2006, then this lease is automatically renewed for an additional five (5) years at a monthly rental of $2,782.00.
 

 Lessee shall have the right to assign this lease or sub-lease the leased premises in whole or in part for legitimate commercial purposes, provided Lessee obtain from Lessor prior written consent, which consent shall not be unreasonably withheld and provided that Lessee shall always remain responsible to Lessor for the faithful performance and moral obligation of this Lease.
 

 Royal used the property in its operation of an Oldsmobile automobile dealership until 2003. At that time, General Motors announced that it was terminating the Oldsmobile franchise and Royal made plans to close the dealership. Royal was approached by Christopher Sarpy (“Sar-py”) and Neal Hixon (“Hixon”), who wished to develop a portion of Royal’s property fronting Veterans Highway (the Chehardy Lease) for a Whole Foods Market. After some negotiations, Royal and Sarpy and Hixon came to an agreement whereby Royal would allow Sarpy and
 
 *1112
 
 Hixon to purchase the Chehardy Lease if the Gennaro lease was also part of the agreement. Accordingly, on April 16, 2003, Royal entered into an “Agreement for Assignment of Leases and Leasehold Interests” with Sarpy/Hixon Development, L.L.C. The agreement involves both the Chehardy and the Gennaro leases. The document contains the following language:
 

 WHEREAS, Seller desires to assign the Chehardy Lease to Purchaser for the Purchase Price and have Purchaser assume all of Seller’s obligations under the Leases, subject to and in accordance with the terms and conditions specified herein; and
 

 WHEREAS, Purchaser desires to acquire the Chehardy Lease for the Purchase Price and assume all of Seller’s obligations under the Leases, and to succeed to Seller’s leasehold interests under the Leases, subject to and in accordance with the terms and conditions specified herein;....
 

 At Closing, Purchaser shall assume and timely perform all obligations of Seller under the Leases which accrue from and after such date and shall deliver an agreement from Chehardy agreeing to release Seller from its obligations under the Chehardy Lease upon terms reasonably acceptable to Seller. At Closing, Purchaser and Chris Sarpy and Neal Hixon, individually, solidarily agrees to indemnify, defend and hold Seller harmless from any and all obligations that Seller may have under the Leases after the Closing, and Seller agrees to indemnify, defend and hold Purchaser harmless from any and all obligations that Seller had under the Leases prior to the Closing....
 

 On November 24, 2003, Sarpy/Hixon Development assigned its rights under the agreement to Area 51, a new entity formed by Sarpy and Hixon. Royal requested and received written permission to sublease the Gennaro property from Gennaro and, on November 25, 2003, Royal and Area 51 entered into a sublease for both the Che-hardy and the Gennaro Leases. That document is entitled “Sublease” and contains the following language:
 

 1. From the Effective Date hereof until the expiration of the terms of each respective Assumption Lease, Sub-lessor subleases the Leased Premises under the Assumption Leases ... to Sublessee on the same terms and conditions contained in the Assumption Leases....
 

 Area 51 developed a Whole Foods Store on the Chehardy Lease property. The Gennaro-leased property was used as a staging area during construction of the store. Area 51 paid the rent due on the Gennaro lease directly to Gennaro as agreed until October 31, 2006. On that date, Sarpy sent a letter to Gennaro stating, “Please find enclosed a check constituting full payment of the remaining term of the lease for the warehouse on N. Hul-len Street. As discussed, we do not have any further use for the property and have already vacated.” Enclosed with the letter was a check with the notation, “final payment of lease.” Gennaro accepted the check and deposited it in his bank account.
 

 On May 21, 2007, Gennaro filed this action against Royal alleging that, since no notice was received from Royal that it intended to cancel the master lease, the automatic renewal clause of that lease was activated. Consequently, Gennaro contends that the master lease between Gen-naro and Royal was renewed for an additional five years on January 1, 2007 at the rate of $2,782.08 per month from the renewal date to the present. Additionally, Gennaro asserts that Royal breached its obligation under the lease agreement to keep the property in good repair by not
 
 *1113
 
 carrying insurance or performing repairs to the property caused by Hurricane Katrina.
 

 Royal answered the petition filed by Gennaro and filed a third-party petition against Area 51 seeking indemnification in the event Royal is held liable to Gennaro. Royal reasons that, because Area 51 assumed all of Royal’s responsibility under the master Gennaro lease in the sub-lease, Area 51 is liable for any amount due Gen-naro under the master lease.
 

 Additionally, Royal asserted affirmative defenses to the Gennaro action asserting that Area 51 made all payments required under the master Gennaro lease. Royal also urges the written notice that Area 51 had vacated the property and would not be renewing the lease, as well as the acceptance of final payment estopped Gennaro from entitlement to any further funds.
 

 Royal filed a motion for summary judgment seeking to dismiss Gennaro’s action against Royal. Gennaro opposed that motion and filed a motion for summary judgment asserting that Royal retained all duties of performance and obligation under the master lease, including the requirement to notify Gennaro if the lease was not to be renewed. Gennaro disputes Royal’s claim that Area 51’s actions met Royal’s obligations of notice under the master lease. Gennaro points out that Area 51 was not a party to the master lease, and Gennaro was not a party to the sublease between Royal and Area 51. In conclusion, Gennaro maintains that Royal is obligated under the master lease to pay rent from the automatic renewal date, since Royal did not notify Gennaro that it did not want to renew the master lease when Area 51’s sublease was ended. Gennaro further contends Royal is liable for failing to repair the property after Hurricane Katrina under the terms of the master lease.
 

 After a hearing on both motions for summary judgment, the trial court rendered judgment in favor of Gennaro, awarding lease payments and building expenses for a total amount of $54,791.17. The judgment reserved Gennaro’s right for any damages that may occur between October 2009 and December 2011. The court further denied the motion for summary judgment filed by Royal.
 

 Both Gennaro and Royal filed motions for new trial. Before the motions were heard, Royal filed a second motion for summary judgment asserting that Area 51 is liable for the $54,791.17 for which Royal was cast in judgment to Gennaro in the trial court’s grant of summary judgment. Royal filed for a continuance of the hearing on the new trial motions, which was opposed by Gennaro. Area 51 filed a motion for summary judgment against Royal, arguing it is not liable for Royal’s obligation to Gennaro. Royal and Area 51 agreed that both summary judgments should be argued and considered together.
 

 The trial court heard both motions for new trial filed on the grant of the previous summary judgment in favor of Gennaro and the award of damages by Royal and Gennaro, as well as the motions for summary judgment filed by Royal and Area 51 on the issue of whether Area 51 was liable to Royal in the event it was cast in judgment to Gennaro.
 

 Ultimately, the trial court granted the motion for new trial filed by Gennaro and awarded attorney’s fees, costs, and interest to the prior judgment against Royal and denied the motion for new trial filed by Royal. The trial court also denied the motion for summary judgment filed by Royal relating to its cross claim against Area 51, and it granted Area 51’s motion for summary judgment. Royal appeals both judgments of the trial court.
 

 
 *1114
 

 LAW AND ANALYSIS
 

 Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law.
 
 [2]
 

 It is well settled that appellate courts review summary judgments de novo.... Appellate courts ask the same questions the trial court does in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law.... Summary judgment is appropriate when it has been shown by the mover that “there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law.” ...
 
 [3]
 

 The first issue to be resolved is whether the transaction between Royal and Area 51 constituted an assignment or a sublease of the Gennaro property. The undisputed facts are that Gennaro was not a party to the agreement between Royal and Area 51. Gennaro agreed to allow Royal to sublease the property to Area 51 and accepted the monthly rent check from Area 51 at the request of Royal. Gennaro agreed to a sublease but never agreed to an assignment of the master lease to Area 51. It is undisputed that Gennaro was not a party to the sublease and Area 51 was not a party to the master lease.
 

 Gennaro argues he agreed to a sublease, not to an assignment of the master lease, because, under a sublease, the master lessor preserves his rights against the lessee/sublessor who is still bound to perform the duties of the master lease.
 

 A sublease is an agreement whereby the original lessee leases to a third party, the sublessee, all or part of the properties leased to the original lessee by the owner of the properties. When parties enter into a sublease, a new contract comes into existence which is separate and distinct from the original lease between the sublessor and the owner of the properties. The rights and obligations of the sublessor and sublessee arise out of the provisions of the sublease. There is no privity of contract between the owner of the property and the sublessee.... The sublessee is not considered as an original lessee, and may only exercise rights under the original lease through the original lessee ....
 
 [4]
 

 Although there is some language regarding assignments in the first document executed by Royal and Area 51, the document in question is entitled “sublease” and runs for a term from “the Effective Date hereof until the expiration of the terms of each respective Assumption Leases.” Given the documents presented herein, we find Royal entered into a sublease for the Gennaro property with Area 51. Accordingly, we find the master lease between Gennaro and Royal was still valid.
 

 We now turn to the question of whether the notice given to Gennaro by Area 51 was sufficient to meet Royal’s obligation under the master lease to prevent the automatic renewal clause from becoming effective.
 

 
 *1115
 
 The master lease is clear that, if the Lessee (Royal) does not notify the Lessor (Gennaro) it is vacating the premises on December 31, 2006, then the lease is automatically renewed for an additional five years at a monthly rental of $2,782.08.
 

 Royal concedes that, under the master lease, it was obligated to notify Gennaro if it did not intend to renew the lease. However, Royal urges this Court to hold that Gennaro received ample notice that the premises was being vacated both from Area 51 by the October 31, 2006 letter and final rent check, and by Gennaro’s knowledge that Royal had long ago vacated the premises and was not operating its dealership at that location. In support of that position, Royal cites
 
 Polizzotto v. DAgosti-n
 
 o,
 
 [5]
 
 for the proposition that mere infor-malities in notice do not render the notice invalid, where notice is sufficient in view of all the circumstances, it will | suffice. Additionally, Royal argues that it assigned all of its obligations under the master lease to Area 51; therefore, Area 51 had the right to renew or cancel the lease at its termination date.
 
 [6]
 
 Thus, the termination notice sent by Area 51 to Gennaro was sufficient to end the master lease. Royal also refers us to La. C.C. art. 2729, which provides:
 

 If the leased thing is an immovable.or is a movable used as residence, the notice of termination shall be in writing. It may be oral in all other cases.
 

 In all cases, surrender of possession to the lessor at the time at which notice of termination shall be given under Article 2728 shall constitute notice of termination by the lessee.
 

 When a property is subleased, the right to renew a lease is held by the original lessee and not the sublessee.
 
 [7]
 
 We are not convinced by Royal’s argument that the letter of termination sent by Area 51 was sufficient to provide notice by Royal under the master lease. Clearly, Area 51 could not have exercised an option to renew the lease, committing Royal to five more years as principal lessee on the property. Conversely, Area 51 cannot exercise Royal’s option not to renew the lease should Royal still have need for the property. Therefore, we are not persuaded by Royal’s argument that notice to Gennaro by Area 51 was sufficient to prevent the automatic renewal clause in the master lease from being activated. Further, we do not find merit in Royal’s argument that the clause obligating Area 51 to assume Royal’s obligations under the lease extends to issues of renewal of the lease.
 

 Royal cites La. C.C. art. 2729 and La. C.C.P. art. 4731(B). However, we find neither of these articles relevant to our discussion. La. C.C. art. 2729 relates to leases with indeterminate terms, and La. C.C.P. art. 4731(B) relates to the type of notice required for eviction purposes.
 

 Accordingly, we find the judgment of the trial court granting summary judgment in favor of Gennaro finding that the lease had been automatically renewed for failure of Royal to supply sufficient notice to be correct, and we affirm that ruling insofar as it relates to lost rental income during the five years of the renewed lease and damages.
 

 However, we find error in the trial court’s decision to grant summary judgment in favor of Area 51. Under the terms of the sublease, Area 51 assumed
 

 
 *1116
 
 Ml responsibility throughout the term for the condition of the Leased Premises during the term of this Sublease, and Sublessee shall perform all maintenance and repairs that are necessary or desirable to keep the Leased Premises in the same good, orderly and safe condition and state of repair as they are on the date hereof....
 

 The sublease further provides that
 

 Sublessee shall maintain all existing insurance presently in place on the Leased Premises and shall name Sublessor as an additional named insured under any policies of insurance. Sublessee shall indemnify and hold harmless Sublessor from and against any and all claims, demands, cause of action, hens, losses, damages, liabilities, costs and expenses (including reasonable attorneys’ fees and court costs) on any and every kind arising from any breach or default in the performance of any obligation of Subles-see’s part....
 

 Area 51’s obligation to Royal began on November 25, 2003, the effective date of the sublease, and continued until December 31, 2006, the termination date of the master lease. Thus, Area 51 is responsible to Royal for any damages to the property that occurred during that time. Accordingly, we reverse. the grant of the cross motion for summary judgment filed by Area 51 in the judgment rendered by the trial court on August 26, 2009 and remand the matter for further proceedings.
 

 AFFIRMED IN PART; REVERSED IN PART; REMANDED.
 

 [1]
 

 . Mr. and Mrs. Tony Gennaro transferred their interest in the lease to their son, Glenn Gennaro.
 

 [2]
 

 . La. C.C.P. art. 966(B).
 

 [3]
 

 .
 
 Graci v. Gasper John Palazzo, Jr., L.L.C.,
 
 09-347 (La.App. 5 Cir. 12/29/09), 30 So.3d 915 (citations and emphasis omitted).
 

 [4]
 

 . Latter & Blum, Inc. v. A.J. Warehouse, Inc.,
 
 487 So.2d 573, 574 (La.App. 4 Cir.1986) (citations omitted).
 

 [5]
 

 . 170 La. 932, 129 So. 534 (1930).
 

 [6]
 

 . In support of this argument, Royal cites
 
 Latter & Blum v. A.J. Warehouse, Inc.,
 
 487 So.2d 573 (La.App. 4 Cir.1986).
 

 [7]
 

 . Hebert v. Hines,
 
 615 So.2d 44, 46 (La.App. 3 Cir.1993).