R & E PETROLEUM, LLC, RAGHEB CHAAR, & ELSIE ARADI

VERSUS

LKM CONVENIENCE, LLC & TOAN HYUNH

NO. 22-CA-376

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 802-522, DIVISION "N"
HONORABLE STEPHEN D. ENRIGHT, JR., JUDGE PRESIDING


February 01, 2023


**FREDERICKA HOMBERG WICKER**
**JUDGE**


Panel composed of Judges Susan M. Chehardy,
Fredericka Homberg Wicker, and Hans J. Liljeberg


**AFFIRMED AS TO  THE PORTION OF THE JUDGMENT APPEALED**
   **FHW**
   **SMC**
   **HJL**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Alexis Barteet
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
R & E PETROLEUM, LLC, RAGHEB CHAAR AND ELSIE ARDI
    Scott L. Sternberg
    Graham H. Williams
    Mervatt F. Eljaouhari

COUNSEL FOR DEFENDANT/APPELLEE,
LKM CONVENIENCE, L.L.C.
    Steven M. Hannan
    Justin A. Caprera

COUNSEL FOR DEFENDANT/APPELLEE,
TOAN HYUNH
    Miles G. Trapolin

**WICKER, J.**

Plaintiffs-sublessees seek review of the trial court judgment finding that plaintiffs are not entitled to dissolution of the commercial sublease executed between plaintiffs and defendant-sublessor, and further, awarding defendant $252,056.12 in past due rent, in addition to attorney fees and reasonable costs and fees. For the following reasons, we affirm the trial court judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

This litigation arises out of a Sublease executed between defendant-sublessor, LKM Convenience, L.L.C. ("LKM"), and plaintiffs-sublessees, R&E Petroleum, L.L.C., Ragheb Chaar, and Elsie Aradi (sometimes hereinafter referred to collectively as "R&E"), for a property located at 1020 Bridge City Drive and operated as a convenience store and fuel station. LKM leased the property pursuant to a Master Lease executed between LKM and the property owner-lessor, Toan Hyunh. After significant water intrusion and termite issues arose, R&E filed suit against Hyunh and LKM, contending that Hyunh was responsible for necessary repairs to the property as set forth in the Master Lease, and seeking dissolution of the Sublease under La. C.C. art. 2719.[1] LKM answered the suit, alleging that the Sublease contained a waiver of warranty provision and further placed the duty of all repairs on R&E. LKM also filed a reconventional demand against R&E for past due rental payments and late fees, in addition to reasonable attorney fees and costs as provided for in the Sublease between the parties.

The matter proceeded to a bench trial on December 13 and 14, 2021. At trial, the parties introduced into evidence the Master Lease and Sublease executed between the parties. The August 1, 2015 Master Lease executed between owner-lessor Hyunh and LKM, with a ten-year (120 month) term, provides that LKM pay

---

[1] R&E sought approval to deposit the monthly rental payments into the registry of the court pending the outcome of the litigation.

a monthly rent of $5,250.00 for the first 12 months of the lease, with a $100 annual increment increase in rental payments throughout the term of the lease. The Master Lease further provides that LKM is responsible to repair or maintain the entirety of the leased premises, but that lessor Hyunh "shall be responsible only to maintain the roof, foundations and outside walls." The Master Lease allows for LKM to sublet the leased premises with Hyunh's written consent.

The Sublease between R&E and LKM, executed on July 12, 2016, provides that R&E pay to LKM a monthly rental payment of $8,000.00 for the first three-year period of the Sublease, with incremental increases throughout the term of the Sublease—terminating on July 31, 2025.[2] The Sublease described the leased premises and stated that the terms of the Master Lease would be incorporated into the Sublease and that, generally, "Sublessee hereby agrees that, notwithstanding any provisions of this Sublease or any current or future agreements by and between Sublessor and Sublessee to the contrary, it will not commit any act which is prohibited by the Primary Lease or which will constitute an event of default of any of Sublessee's obligations under the Primary Lease."

The Sublease also contained a subsequent, separate waiver of warranty provision. The provision provided:

Article 8
Condition of Premises and Improvements

Sublessee has examined the Leased Premises, the improvements thereon, and the present uses and non uses thereof. Sublessee accepts the Leased Premises in the condition in which they now are, without representation or warranty, express or implied, in fact or by law, by the Sublessor, and without recourse to the Sublessor as to title, the nature, condition, or usability of the Leased Premises, or the uses to which the Leased Premises may be put. Sublessee expressly waives the warranties that the Leased Premises is suitable for the purpose for which it is leased and that it is free of vices and defects that prevent its use for that purpose provided by Louisiana Civil Code Articles 2696 and 2697 et seq.

---

[2] The original Sublease provided the Sublease's term as a month-to-month term. However, the parties subsequently executed an Amendment to the Sublease to define a fixed term, with the lease extending to July 31, 2025.

Immediately following the warranty waiver language, this provision contained a designated space for sublessees' signatures. Ragheb Chaar and Elsie Aridi, as members of R&E Petroleum, L.L.C., placed their signatures on the designated signature lines verifying that "[t]he Undersigned Hereby Acknowledge That The Above Waiver Of Warranties Have Been Pointed Out And Explained To Sublessee And Sublessee Hereby Accepts Same."

The Sublease further included a provision titled, "Repairs, Maintenance and Utilities," which provided that "[a]ll maintenance, repairs, and replacements which may be required to the Lease Premises …shall be the sole responsibility and expense of the Sublessee."[3]

At trial, Ragheb Chaar testified that he is an owner of R&E Petroleum, L.L.C. with his wife, Elsie Aridi, and that he has been in the convenience store and gas station industry for 39 years. He testified that R&E operates five gas station convenience store locations, including 900 Bridge City and 1020 Bridge City (the leased premises at issue). He testified that the opportunity to open a gas station convenience store at 900 Bridge City, which is a bigger store, arose approximately one month after he leased the 1020 Bridge City location. He explained that he believed leasing 900 Bridge City, due to the proximity to the 1020 Bridge City location, would be a smart business move in order to control the price of the fuel product in the area.

He testified that at some point in time the condition of the 1020 Bridge City store began deteriorating due primarily to water intrusion issues. In 2016, he noticed significant water intrusion issues from the roof and informed a representative for LKM of the issue. At some point in 2017, the roof was repaired

---

[3] The Sublease also provided that R&E would pay all property taxes due for the Leased Premises during the term of the Sublease.

or replaced by a roofer retained by Hyunh. However, Chaar testified that the water intrusion and roof leak issues became significantly worse at the end of 2018 and into 2019, interfering with the ability to operate the store successfully.[4]

Chaar testified at trial that he never read the Sublease executed between R&E and LKM. He acknowledged that his signature appears at the conclusion of the Sublease and that a second signature appears in a separate section wherein he signed and accepted on behalf of R&E that he "waives the warranties that the Leased Premises, or the uses to which the Leased Premises is suitable for the purpose for which it is leased and that it is free of vices and defects that prevent its use for that purpose provided by Louisiana Civil Code Articles 2696 and 2697, et seq." and further "Acknowledge[d] That The Above Waiver of Warranties Have Been Pointed Out And Explained to Sublessee."

Chaar testified without hesitation that, prior to entering into the commercial Sublease for the immovable property, he did not consult an attorney to review the lease and did not personally read the documents that he signed. He testified that he believed that, similar to other leases for other stores he has operated, the lessor Hyunh would be responsible for the roof, foundation, electrical and plumbing systems, and essentially all major repairs.

Mrs. Elsie Aridi, an owner of R&E, also testified that she and her husband, Ragheb Chaar, operate five gas station convenience stores in the metropolitan area. She testified that she handles the daily financial aspects for the five stores but that she retains MK Accounting on occasion when necessary for taxes or other

---

[4]He testified that the entire roof blew off the portion of the building that houses the fuel station during Hurricane Ida and that, at the time of trial, it had never been replaced and his store had not reopened. He testified, however, that the other businesses occupying the spaces attached to the Lease Premises have reopened since Ida. It does not appear that any rental payments beyond the August 2021 (when Hurricane Ida struck the area) were awarded in this suit and thus that issue is not before the Court.

purposes.[5]  Mrs. Aridi reiterated that she did not personally read the Sublease and did not ask any attorney to review the Sublease prior to signing it.

Lenny Motwani, owner of LKM, testified that he is a businessman who has been in the convenience store business since 2008.  He testified that at the time he executed the Sublease with R&E in July, 2016, Hyunh did not immediately "sign off" on the Sublease or accept R&E as sublessee.  Further, he did not obtain Hyunh's written consent to the Sublease until roughly seventeen months later, in January 2018.  He acknowledged that R&E began occupying the leased premises prior to obtaining Hyunh's consent, which is required under the Master Lease.  As to the Sublease executed between LKM and R&E, Mr. Motwani testified that his obligations under the Sublease simply included collecting rent and insurance payments.[6]

Pini Weinstien, Hyunh's attorney and acting manager for the property at 1020 Bridge City, testified that he prepared the Master Lease between Hyunh and LKM.  He testified that LKM indicated a desire to sublease the property beginning in 2016, but that he advised LKM to be selective in selecting a prospective sublessee.  Initially, Weinstien discouraged approving any sublease between LKM and R&E because he had concerns after reviewing the financial documentation R&E provided.  He testified that he was unaware at that time that R&E began occupying the property without written approval of the owner-lessor as required under the Master Lease.  At some point, Weinstien reviewed the proposed Sublease between LKM and R&E, which included a waiver of warranty provision and further placed all responsibility for repairs on R&E.  Weinstien testified that

---

[5] Mrs. Aridi testified to the alleged profit losses during years 2018 and 2019 due to the alleged deteriorating condition of the property.  However, on cross examination, she acknowledged that she coded her spreadsheets incorrectly and that the accounting firm would be the appropriate source for those estimates.

[6] Motwani testified that he had not received rental payments since July 2019 or insurance reimbursements since December 2019.  However, Motwani acknowledged that the parties had reached an agreement that the rental payments would be placed in the registry of the court pending resolution of the litigation.

those restrictions in the Sublease "absolutely" factored into his recommendation to Hyunh to accept R&E as a sublessee and was a determining factor in Hyunh's ultimate decision to approve the Sublease despite concerns over R&E's finances.[7]

On February 4, 2022, the trial court rendered its judgment dismissing R&E's suit against defendants, finding that R&E is not entitled to dissolution of the Sublease in light of the waiver of warranty provision, which waived any warranty that the leased premises was free from vices or defects, and further considering the provision within the Sublease placing the duty for repairs of the leased premises on R&E.[8] The trial court judgment further sustained LKM's reconventional demand, finding that R&E was in default or breach of the Sublease and liable to LKM in the amount of $252,056.12 in past due rental payments and fees.[9]

## DISCUSSION

On appeal, R&E alleges that the trial court legally erred in failing to find that LKM breached the Sublease between the parties. R&E contends that because the Master Lease, which required lessor-owner Hyunh to be responsible for the roof and foundation repairs to the property, was incorporated into the Sublease, Hyunh should have been responsible for repairs to the roof and those related to termite damage.

In Louisiana, contracts have the force of law between the parties, and the parties may choose to define their obligations by their own terms. *Good v. Saia,* 08-0682 (La. App. 4 Cir. 4/8/09), 9 So.3d 1070, 1074; *see also,* La. C.C. art.

---

[7] The testimony at trial reflects that, although the "Consent of Property Owner under Primary Lease" was signed as a separate document and dated June 22, 2016, Hyunh's approval was not actually granted and the document was not signed until January 2018. An August 2, 2017 email from Chaar to Motwani and LKM's counsel indicates that the landlord had not signed the "Assignment" yet and that Weinstien had instructed him that R&E was occupying the building illegally because the landlord had not consented to or approved the sublease at that time. The testimony of all parties appears to indicate that the "Consent of the Property Owner" document was not actually signed until January 2018.

[8] The trial court judgment also dismissed Hyunh's cross-claim against LKM. That portion of the judgment is the subject of a separate pending appeal in this Court, 22-CA-238.

[9] The trial court judgment also awarded LKM reasonable costs and attorney fees. On appeal, R&E does not challenge the amount of the judgment awarded; rather, its assignments of error contend only that Hyunh is responsible for the roof and other repairs and that R&E is not responsible for paying any rent until the property deficiencies are repaired.

1983. A sublease is an agreement whereby the original lessee leases to a third party, the sublessee, all or part of the property leased to the original lessee. *Gennaro v. Royal Oldsmobile Co.*, 09-1062 (La. App. 5 Cir. 5/25/10), 37 So.3d 1109, 1114 (quoting *Hebert v. Hines,* 615 So.2d 44, 46 (La. App. 3 Cir.1993). A sublease is a new contract which is separate and distinct from the original lease between the sublessor and the original lessor. *Id.* The rights and obligations of the sublessor and sublessee arise out of the provisions of the sublease; however, there is no privity of contract between the owner of the property and the sublessee. *Id.*

A sublease is distinct from an assignment. An assignment of a lease specifically transfers all of the original lessee's rights in the lease to the assignee; with a sublease, the original lessee maintains some control or interest in the original lease. *Id.*; *Whitley's Estate v. Anning*, 392 So.2d 799, 800 (La. App. 3 Cir. 1980). When a dispute arises between the sublessee and sublessor regarding a breach of the sublease, the court looks to the terms of the sublease in order to determine the respective rights of the sublessee and sublessor. *Bourgeois, Dupuis, Wright & Cohen v. Hayes*, 457 So. 2d 231, 234 (La. App. 3 Cir. 1984), *writ denied sub nom. Bourgeois, Dupuis, Wright, & Cohen Certified Pub. Accts. v. Hayes*, 461 So.2d 315 (La. 1984).

"The Civil Code ... while defining and governing the relationship of the parties to a lease, still leaves the parties free to contractually agree to alter or deviate from all but the most fundamental provisions of the Code which govern their lease relationship." *Carriere v. Bank of Louisiana,* 95-3058 (La.10/31/97), 702 So.2d 648, 666 (on reh'g); *727 Toulouse, L.L.C. v. Bistro at the Maison De Ville, L.L.C.*, 12-1014 (La. App. 4 Cir. 8/21/13), 122 So.3d 1152, 1161, *writ denied*, 13-2414 (La. 1/10/14), 130 So.3d 327.

La. C.C. art. 2696 provides, in pertinent part, that "[t]he lessor warrants the lessee that the thing is suitable for the purpose for which it was leased and that it

is free from vices or defects that prevent its use for that purpose." The aforementioned warranty however "may be waived, but only by clear and unambiguous language that is brought to the attention of the lessee." La. C.C. art. 2699; *Crosby v. Sahuque Realty Co., Inc.*, 21-0167 (La. App. 4 Cir. 10/13/21), 2021 WL 4771687.[10] "Louisiana cases have upheld the validity of transfer of liability provisions ... in the context of a lease of immovable property." *Ford v. Bienvenu*, 00-2376 (La. App. 4 Cir. 8/29/01), 804 So.2d 64, 69, *writ denied*, 01-2688 (La. 12/14/01), 804 So.2d 639. A party who signs a written lease is "bound to know and understand the provisions of the lease." *Crosby*, *supra*, quoting *Ford v. Bienvenu*, *supra*, 804 So.2d at 71; see also generally *Aguillard v. Auction Management Corp.*, 04-2804 (La. 6/29/05), 908 So.2d 1, 10.

Upon a review of the record, we find the waiver of warranty—a separate provision or section of the Sublease contract, clearly visible that required additional signatures of the parties—controls in this case, and the repair provision places full responsibility for the repairs to the Leased Premises without exception and at the expense of the sublessee, R&E. We further agree with the trial court's finding that the contract between LKM and R&E, titled "Sublease Agreement"—which provided for a higher security deposit payment and a higher monthly rental payment than the Master Lease, and further directed that the rental payments and security deposit be made to the sublessor, LKM, rather than the original lessor, Hyunh is not an assignment of the Master Lease and, thus, there is no privity of contract between Hyunh and R&E. Consequently, we further agree with the trial court's finding that Hyunh did not owe R&E any duty to make repairs to the leased

---

[10] Further, where a lessee has assumed responsibility for the condition of the premises and waived the warranty from vices and defects, La. R.S. 9:3221 provides a statutory exception to La. C.C. art. 2699 and it is not mandatory that the waiver be brought to the attention of the lessee unless certain conditions apply. Because the waiver of warranty provision in this case was clear and brought to the attention of the lessee within the Sublease, we need not address the applicability of La. R.S. 9:3221.

premises. See *Gennaro v. Royal Oldsmobile Co., Inc.*, 09-1062 (La. App. 5 Cir. 5/25/10), 37 So.3d 1109. 1114.

**DECREE**

Accordingly, we affirm that portion of the February 4, 2022 judgment dismissing R&E's petition against Hyunh and LKM, and further affirm that portion of the judgment against R&E and in favor of LKM in the amount of $252,056.12, plus LKM's reasonable fees, attorney fees, and costs as provided to the prevailing party pursuant to the Sublease executed between the parties.

**AFFIRMED AS TO THE PORTION OF THE JUDGMENT APPEALED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
INTERIM CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **FEBRUARY 1, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 22-CA-376

### E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE STEPHEN D. ENRIGHT, JR. (DISTRICT JUDGE)
GRAHAM H. WILLIAMS (APPELLANT)      SCOTT L. STERNBERG (APPELLANT)      JUSTIN A. CAPRERA (APPELLEE)
STEVEN M. HANNAN (APPELLEE)         MILES G. TRAPOLIN (APPELLEE)

### MAILED

PINI AARON WEINSTEIN (APPELLEE)         MERVATT F. ELJAOUHARI (APPELLANT)
ATTORNEY AT LAW                         ATTORNEY AT LAW
416 LAFAYETTE STREET                    935 GRAVIER STREET
GRETNA, LA 70053                        SUITE 2020
                                        NEW ORLEANS, LA 70112